[No. 4454.  Decided December 6, 1902.]

CHARLES L. MORTON, *Respondent*, v. MORAN BROS. COM-
PANY, *Appellant*.

INJURIES TO SERVANT — CONTRIBUTORY NEGLIGENCE — QUESTION FOR
JURY.

. The question of plaintiff's contributory negligence was proper-
ly submitted to the jury, where it appeared that he was ignorant
of the hazards incident to work aboard ship, and was taken by the
foreman of defendant company away from his work in the foun-
dry to help make repairs on a vessel; that the foreman went into
the lower between-decks with a lighted candle, and after an exam-
ination returned, and ordered plaintiff to carry some boards down
there by means of a ladder which the foreman had placed; that
plaintiff started down with a board and a lighted candle which he
held by means of one arm and hand, and when near the foot of
the ladder it tilted, and, fearing a fall, he stepped off the side of
the ladder and fell to the bottom of the vessel through a hole lo-
cated close to the foot of the ladder; that the hole was not visible
by reason of the darkness, but was known to the foreman, and he
had failed to warn plaintiff of it.

SAME — EXCESSIVE DAMAGES.

Where there is no evidence of passion or prejudice on the part
of the jury, and where the trial judge, who has seen the witnesses
and heard the testimony, has refused a new trial urged on the
ground of excessive damages, the supreme court will not interfere
with the verdict.

Appeal from Superior Court, King County.—Hon.
GEORGE MEADE EMORY, Judge. Affirmed.

*Preston, Carr & Gilman* and *R. S. Eskridge,* for appel-
lant.

*Wilshire & Kenaga,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—Action for personal injuries. Upon a trial
of this case in the court below the jury returned a verdict

for $2,500 in favor of the plaintiff. The lower court denied a motion for a new trial, and thereupon entered judgment against the defendant for the amount of the verdict. From this judgment defendant appeals.

Two questions are presented here: (1) That the court erred in denying defendant's motion for a nonsuit at the close of plaintiff's evidence, which was renewed at the close of all the evidence; and (2) that the verdict is excessive. The negligence and the injury complained of are alleged in the complaint as follows:

"That on the 18th day of October, 1901, while plaintiff was so engaged as aforesaid, the defendant, being short of help, removed plaintiff, without his consent, from said work as a molder's helper, and ordered him to immediately go to work on the steamship 'Elbe,' then lying for repairs at a wharf of said defendant near said ship yard in the city of Seattle, and ordered plaintiff to go to the lower between-decks on said ship, where it was dark and dangerous, and the dangers concealed, which conditions were well known to defendant, but unknown to plaintiff, and where there was a dark and dangerous hole, which was known to defendant but unknown to plaintiff; and directed plaintiff to carry some lumber down to said lower between-decks on said ship by a certain ladder extending down from between-decks to lower between-decks, placed there as hereinafter stated, by the foreman in charge of said work for the defendant.

"That plaintiff had never before worked on a ship, and never before been below the passenger deck on a ship, and knew nothing about the dangers or hazards to which a workman on board ship was exposed, but the defendant, well knowing the dangers aboard a ship, and the dangers and hazards incident to such work on said ship, and well knowing the plaintiff's lack of skill and lack of any knowledge in regard thereto, and well knowing plaintiff's ignorance of any danger or dangers to which he was, or would be, exposed while at labor aboard said ship, and in going to and

from the place to which he was directed to go on said ship, recklessly, wrongfully, carelessly, and negligently ordered him to do said work, and to go into the lower between-decks of said vessel down.said ladder, without giving him any caution or warning whatsoever of the dangers incident to such place and to such work; the defendant full well knowing that said dangers were concealed, and that plaintiff was in ignorance thereof.

"That on the 18th day of October, 1901, while the plaintiff was working under the express direction and orders of defendant's foreman, he went aboard said vessel with said foreman in obedience to an immediate order, thence with him down from the main deck on a ladder in a hatchway to between-decks of said vessel, and from there said foreman directed plaintiff, who was then still on the between-decks, to go up and get boards for staging, and bring them down to lower between-decks where said foreman then was. That plaintiff, in immediate obedience to said order, went up to the maindeck, and returned thence with a short piece of board to the ladder going down from between-decks to lower between-decks, and then started to descend said ladder, believing the same to be safe, and in ignorance of the recklessness, carelessness and negligence of the defendant in placing said ladder as hereinafter stated, and in ignorance of the dangers of the place to which he was directed to go, when, by reason of the recklessness, carelessness, and negligence of said defendant, said ladder turned, and plaintiff was thrown off, and he fell down through said dark and dangerous hole in said lower between-decks of said vessel, so left open as hereinafter stated, into the hold of said vessel, a distance of twenty feet, by which the collar bone of plaintiff was broken, his ribs on the left side lacerated, bruised, and mangled, his knee lacerated, bruised, and sprained, and the plaintiff greatly injured.

"That the ladder from which plaintiff was thrown as aforesaid, was the only way by which plaintiff could get to lower between-decks in obedience to defendant's order, and was placed by said foreman of the defendant in a reckless, careless, and negligent manner, so that the foot of the same

stood in a dangerous and uneven manner on a narrow cross piece over said dark and dangerous hole in lower between-decks, which was extremely dangerous, and of which the plaintiff had no knowledge, and could have had no knowledge whatsoever. That said ladder extends from between-decks to lower between-decks. That it was so dark that plaintiff could not see the bottom of said ladder, nor its condition as to safety, nor that it was resting on a narrow cross piece over a hole. That defendant well knew the dangers attendant upon the work it directed plaintiff to do, and of the place at which it directed plaintiff to do said work, but the same were wholly unknown to the plaintiff."

Respondent's evidence was substantially as follows: On October 11, 1901, he was employed by appellant's foreman, Mr. Fox, to assist in molding frames on shore at appellant's ship yard. After working at this employment for several days, Mr. Fox took respondent, with some other men, and set him to work on the Japanese ship Kaga Maru, which was lying at appellant's wharf for repairs. This was the only time respondent had been about any ship at appellant's yard. He had never worked on board a ship before, nor had he ever been below the passenger cabins on any ship. On the morning of October 18, 1901, foreman Fox directed the respondent to take some tools, and go to the wharf where the German steamship Elbe was lying in charge of appellant for repairs. In obedience to this direction, respondent took the tools and went to the wharf, where he was joined by other workmen in company with foreman Fox, who conducted respondent upon the steamship Elbe to the main deck. From this main deck, by means of a ladder, they were conducted to the deck below, called the "between-deck." When they arrived at the between-deck, foreman Fox took the ladder from the main hatch, and placed it down through the between-deck hatch to a deck below called the "lower be-

tween-deck," and he and another foreman of appellant, Mr. Rayfield, went down the ladder to the lower between-deck. It was dark on the between-deck except immediately under the main hatch, and candles were used for light.   On the lower between-deck it was totally dark.   Mr. Fox and Mr. Rayfield took lighted candles with them to the lower between-deck.   When they arrived there, respondent was still on the between-deck.   Mr. Fox, from below, directed respondent to get another ladder.   Respondent thereupon took the ladder up from the lower between-deck, and placed it above in the hatch of the main deck, and started to go up to the main deck, when some one handed him another ladder.   He thereupon handed this ladder down to Mr. Fox on the lower between-deck and Fox placed it where the other ladder had been from the between-deck to the lower between-deck, resting the top of the ladder on the after edge of the between-deck hatch, with the foot toward the bow of the ship.   Respondent then started to go down this ladder to the lower between-deck, where Fox and Rayfield were, but before he had gone far down the ladder Fox ordered him to get some short pieces of board five or six feet long, and bring them down there.   Respondent went ashore by way of the ladder to the main deck, and soon thereafter Fox and Rayfield came up from the lower between-deck.   Respondent returned from shore with three pieces of plank, to the main deck.   At the main deck he got a candle, lighted it, and went down to the first between-deck.   There he left two of his boards, and started down the ladder to the lower between-deck, carrying the board under his right arm, the candle in his right hand, and using his left to hold on to the rungs of the ladder. He was accustomed to use his left hand.   He proceeded down the ladder until his head was below the level of the between-deck and his feet were nearly to the bottom rung

of the ladder, when the ladder tilted toward him sidewise, and, in order to avoid a fall, he attempted to step out and down to the floor of the deck, which he supposed was there, but, instead of a floor, the foot of the ladder was near an opening, into which respondent stepped, and was precipitated to the bottom of the ship. As he fell he struck some iron beams, and fell head first some twenty feet below, bruising his leg and side and breaking a piece out of his collar bone. Fox knew of the opening, and that the same was within twelve or fourteen inches of the foot of the ladder, and had given the respondent no caution or warning against the same. Respondent did not know of the opening, and could not see it, but supposed the lower between deck was floored over the same as the between-deck.

We think this evidence was sufficient to take the case to the jury. The fact that the ladder was placed in a dangerous place, at the foot of which was a hole of which foreman Fox knew and of which the respondent did not know, and which he could not see and was not informed about, was proof of negligence of the foreman imputable to the appellant, and was sufficient to make a *prima facie* case for the jury. It is argued that the respondent could have thrown the boards down to the lower between-deck from the between-deck and thus have avoided the injury; but, where respondent was not directed to do so, but was ordered to go and get boards and bring them down, he had a right to obey the order as given, and also had a right to rely upon the foreman to inform him of hidden danger of which the foreman knew and the respondent was not aware. The danger was not apparent, according to the respondent's evidence, but was hidden in the dark, so that he could not see it. The evidence shows that, while respondent was not experienced in work on board ships, he had been accustomed to working in dark places on lad-

ders in mines. And whether he was or was not experienced in such work, it seems to us makes little difference in this case. The foreman, Fox, had gone down the ladder ahead of him, had been down there some minutes making an inspection of the premises, and had come out. Respondent had seen him go down and knew he had come out. He therefore certainly had a right to believe that, if there were any dangers in descending the ladder, or conditions at the foot of that ladder were different from those at the foot of the one he had already descended, which would render it unsafe for a stranger to the premises to go down upon it, the foreman would so inform him. The respondent was not sent below for the purpose of examining for dangers. The foreman had preceded him for that purpose and other purposes and had directed respondent to take some boards down. Under these circumstances this case does not fall within the principle announced in *Anderson v. Inland Telephone, etc., Co.*, 19 Wash. 575 (53 Pac. 657, 41 L. R. A. 410), relied upon by appellant. It is, no doubt, true that all employees at all times must use their senses so as to avoid dangers. But the respondent in this case could not see where he was going. It was dark below. The foreman had been down there, and had returned without informing respondent of the dangerous opening at the foot of the ladder, and therefore respondent had a right to presume that no danger existed there. *Johnson v. Tacoma Mill Co.*, 22 Wash. 88 (60 Pac. 53). Under these circumstances the court could not say as a matter of law that the respondent was guilty of contributory negligence, or that he did not act as an ordinarily prudent person would have acted, and, we think, properly submitted the case to the jury. *Christianson v. Pacific Bridge Co.*, 27 Wash. 582 (68 Pac. 191).

Where there is no evidence of passion or prejudice on the

part of the jury, and where the lower court has seen the witnesses and heard the evidence, and has refused to grant a new trial on the ground of excessive damages, we do not feel disposed to disturb the judgment on this account.

The judgment is therefore affirmed.

REAVIS, C. J., and FULLERTON, DUNBAR and ANDERS, JJ., concur.