[No. 4724. Decided December 8, 1903.]

M. C. STEEPLES, *Appellant*, v. PANEL AND FOLDING BOX COMPANY, *Respondent.*[1]

APPEAL—REVIEW—HARMLESS ERROR. Error in striking evidence is harmless where a verdict must be directed in any event on account of plaintiff's contributory negligence.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—CROSS-EXAMINATION OF PLAINTIFF AS TO KNOWLEDGE OF DANGER. In an action for personal injuries received by falling from an unguarded platform, the plaintiff may be required on cross-examination to testify that he did not look to see if there were guards, as bearing upon the carefulness of his conduct.

NEGLIGENCE—UNGUARDED PLATFORM—ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE—WHEN MATTER OF LAW—NONSUIT. A night watchman who falls from a second story eight foot platform assumes the risk from lack of a railing or is guilty of contributory negligence as a matter of law, where he had worked about the premises for two months, had been on the platform on two other occasions, and had worked thereon for two hours just previous to the accident, and after picking up a lantern fell in

[1]Reported in 74 Pac. 475.

turning around without bringing the light to bear, it being a part of his duty to prepare all the light that was necessary.

SAME—LACK OF KNOWLEDGE—EVIDENCE. The testimony of the plaintiff that he did not know that there was no guardrail is of no avail where it was his duty to make an examination that would have informed him.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered November 6, 1902, upon the verdict of a jury rendered for the defendant by direction of the court at the close of plaintiff's case, dismissing an action for personal injuries sustained in falling from an unguarded second story platform. Affirmed.

*W. H. Abel* (*Govnor Teats,* of counsel), for appellant.

*J. B. Bridges,* for respondent.

DUNBAR, J.—Action for civil damages. The respondent, the Panel & Folding Box Company, was operating a mill or factory for the purpose of manufacturing boxes and other wooden commodities. The factory was in the second story. On the north side of the said second story there was a platform eight feet wide. The produce of the factory was loaded on to cars on the south side of the mill, the cars being on a level with the first story of the factory building; and the manner of loading was to carry the boxes or other produce of the factory on to the platform mentioned above, and slide them down a certain ladder, one end of which rested upon the cars, and the other, upon the platform leading from the door of the factory; and this was the mode of loading the car at the time of the accident.

The plaintiff was night watchman in the factory, but on this evening he had been requested by the superintendent to help load a car, and had done so. After having worked at loading this car for about two hours, his hat blew off. In a

short time thereafter, he took a lantern, which hung just within the door that opened out on to the platform, with the intention of looking for his hat, and, turning around, fell off of the platform a distance of about ten feet, which fall caused the injuries for which he is seeking damages. On the east side of the platform there was an apron sloping off to the ground. On the west side, however, there was no railing of any kind to prevent any one from falling off, and it was from the west side of the platform that he fell.

At the close of plaintiff's testimony, a motion was made to instruct the jury to return a verdict for the defendant, which motion was sustained. Judgment was entered dismissing the action, and from that judgment, this appeal was taken.

With the view we take of the merits of the case, it is not necessary to discuss the second alleged error, viz., that it was error to strike the testimony of the witness Carr concerning previous injuries sustained by another person; because, if the testimony shows that the plaintiff was guilty of contributory negligence, as a matter of law, he could not recover under any circumstances. Nor do we think it was error to require the appellant to testify on cross-examination that he did not examine the platform, or look to see if there were guards or protection. We think this was a very pertinent inquiry, testing the carefulness of his conduct in that respect.

It will be conceded at the outset that it has been well established in this jurisdiction that the law requires the master to furnish a reasonably safe place for the servant to work in; so that it will not be necessary to discuss the cases cited to prove this proposition. It is also evident from the testimony that a reasonably safe place was not furnished for this servant to work in, and that the defendant was

guilty of negligence in that respect. But the pivotal question here is whether the danger was so apparent that the plaintiff assumed the risks of the employment, or whether he was guilty of contributory negligence.

We do not wish to depart from the rule uniformly maintained by this court and laid down in the early case of *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799, where it was said that the question of contributory negligence was for the jury to determine from all the facts and circumstances of the particular case, and that it was only in rare cases that the court was justified in withdrawing it from the jury; but the language of courts must always be interpreted with reference to the circumstances of the case under consideration, and the circumstances of that case were in nowise similar to those in the case at bar. In that case the plaintiff was injured by a defective sidewalk; he stepping upon a loose plank, which was lying partly across an open space about two feet wide, and the board tipping, causing plaintiff to fall through the sidewalk, a distance of eighteen or twenty feet. There being nothing in the circumstance showing conclusively that the danger was apparent, the nonsuit which had been granted was set aside.

In the case of *Morton v. Moran Bros. Co.,* 30 Wash. 362, 70 Pac. 968, cited and relied upon by appellant, the facts were again essentially different from those in the present case. That was where the plaintiff, who had never worked about ships, had been instructed by the foreman to take some pieces of boards down a certain ladder. At the bottom of the ladder, where the plaintiff had a right to presume that he would step on a solid floor, there was a hole instead of a floor, which he stepped into, and which this court held to be a hidden danger, and, under the circumstances of that case, in no way apparent to the plaintiff.

It is contended by the appellant that this case is parallel with *Johnson v. Tacoma Mill Co.,* 22 Wash. 88, 60 Pac. 53, where a carpenter, who was employed to make repairs to a mill at a point where he was unfamiliar with existing conditions, and who was injured by stepping backward into a barrel of hot water, sunk so as to bring the top level with the ground, and which was used to receive the water and steam from the exhaust pipe of an engine in the mill—the presence of the barrel being unnoticeable by reason of the water in the barrel having pieces of bark floating on it, and by reason of no steam arising from the barrel at the time because the mill was not running—had a right of action against the mill company on the ground of its negligence in not furnishing him a safe place in which to work. In reviewing these conditions this court used the language attributed to it by appellant:

". . . and while it is true that the plaintiff in this case could doubtless have seen the barrel, if he had looked for it, . . . he was under no *obligation* to look for it, and naturally would not look for it, for he had no actual notice of its existence; and it does not appear that it was a necessary or common attachment to mills, or, if it was, that it was the custom to leave it uncovered. It was not a danger incident to the business of putting up a pipe, and under the testimony, it was not so conspicuous as to challenge attention; . . ."

But entirely different are the circumstances in this case. The appellant had been working around this mill, off and on, for two months; the first month working at general work around the mill in the daytime for seven days, and as night watchman for five days, commencing work on the 26th of January, 1902. On the 26th of February, following, he commenced to work regularly as night watchman in the mill, and had worked about a month at the time the

accident happened. His business was, as he testifies, to take care of the second story, to light the lamps, and clean up the debris and litter around the building. This platform, which was only eight feet wide, and the edge of which on the west extended only three inches beyond the jamb of the door opening on to it, must have been noticeable to him every time the door was opened—and it was his duty, in his capacity as night watchman, to see that the doors were opened and closed, or at least to see that they were closed.

He testifies that on two other occasions before the night of the accident he had been on the platform, but had not paid any attention to it, and had not noticed whether there was any railing around the platform or not. On this particular night he had worked for two hours on this small platform in loading the car; his testimony being that he had placed one light in the car and the other back in the room, so that there was a dim light along the pathway which he traveled in carrying the boxes from the second story to the chute reaching down to the car, and that he had not noticed that night whether there was any railing on the platform or not. When he picked up the lantern to look for his hat, instead of using the lantern, he negligently moved without bringing the lantern to bear. There were other lanterns there, all under his supervision and care, and it was his duty to prepare all the light that was necessary for the work which was being done. Consequently he can not complain that his injury was caused by not properly lighting the platform. Unlike the case of *Johnson v. Mill Co. supra*—where a pitfall was dug in the level earth around which a man was working, and which was so hidden that it could not be discerned without specially looking for it—ordinary caution, it seems to us, would prompt a man, in working on a platform of this kind, to take some

notice of his bearings. It is not uncommon for platforms of this kind around wharves, docks, and railroad depots, where freight is loaded, to be without guards; and the plaintiff, having been familiar with these premises for two months prior to this accident, under the circumstances shown by his own testimony, it seems to us, was guilty of the grossest negligence in walking around on the platform in the dark, and the peril was so apparent to a person of common understanding that he must be held to have assumed it when he went to work on the platform.

It is true the plaintiff testifies that he did not know that the platform was without a guard, but a plaintiff cannot recover simply by making a statement of that kind, if, under the circumstances, it was his duty, as a reasonably prudent man, to have made such an examination as would have resulted in the desired information. Yielding adherence to the statement often announced by this court, that, where the evidence shows that there could be any difference in the minds of reasonable men as to whether or not a plaintiff was guilty of contributory negligence, it is for the jury and not the court to enter into an investigation of, and decide, that question—we are of the opinion that the state of facts shown in this record precludes any such difference of opinion, and that it must be held that, as a matter of law, the plaintiff was guilty of contributory negligence.

The judgment of the lower court will therefore be affirmed.

FULLERTON, C. J., and MOUNT, HADLEY, and ANDERS, JJ., concur.