(No. 5641.  Decided September 1, 1905.)

WILLIAM MILLER, *Appellant,* v. MORAN BROS. COMPANY, *Respondent.*[1]

MASTER AND SERVANT—SERVANT INJURED BY NEGLIGENCE OF INDEPENDENT CONTRACTOR—OBLIGATION TO FURNISH INDEPENDENT CONTRACTOR WITH APPLIANCES—SELECTION OF IMPROPER APPLIANCE BY SERVANTS OF INDEPENDENT CONTRACTOR.  A master is not liable to. its servant, injured by the negligence of employees of an independent subcontractor on part of the work in making use of unsafe appliances, where it appears that the agreement with the independent contractor did not require the master to furnish the appliances, and that suitable appliances were on the premises and no request was made therefor upon any of the master's officers or foremen, but the improper appliances used were selected by employees of the independent contractor without the knowledge of the master.

SAME—OBLIGATION TO INDEPENDENT CONTRACTOR.  The duty of a master, who delegates part of the work to an independent contractor, to furnish him with suitable appliances would not render the master liable to his own employees for negligence of the independent contractor in respect to appliances used, although the master retained and exercised general supervision over the work, when the choice of methods was left entirely to the independent contractor.

SAME.  There is no violation of a master's duty to furnish an independent contractor with suitable appliances for carrying on the work, by reason of the fact that none were at the tool house when sent for, where there was no request therefor made upon any of the master's officers or foremen.

[1]Reported in 81 Pac. 1089.

SAME. The fact that a master had been furnishing appliances to an independent contractor would not render the master liable to its own employee for the negligence of the independent contractor in furnishing an unsafe device.

SAME—DUTY TO FURNISH SAFE PLACE—ASSUMPTION OF RISK—SERVANT WORKING UNDER HEAVY STEEL PLATE BEING PUT IN PLACE BY INDEPENDENT CONTRACTOR—USE OF UNSAFE APPLIANCE BY CONTRACTOR—KNOWLEDGE OF SERVANT—CONSTANTLY CHANGING DANGERS IN CONSTRUCTION OF SHIP. A carpenter employed by the defendant, a corporation engaged in building a battleship, assumes the risk of constantly changing dangers in the progress of the work, and cannot recover for injuries sustained on the theory that the defendant failed to provide a safe place, where it appears that plaintiff, whose work was constantly shifting from place to place, was working at the time of the accident directly under a heavy steel plate, which was being put in place by employees of an independent contractor, that plaintiff, after helping steady the plate, resumed his work beneath the same, and that the danger was open and as apparent and well known to the plaintiff as to the defendant, the place being rendered unsafe for the moment only, and by reason of the negligence of the employees of an independent contractor, which fact was unknown to the defendant.

SAME—CONTRIBUTORY NEGLIGENCE OF SERVANT IN WORKING UNDER SUSPENDED STEEL PLATE IN CONSTRUCTION OF SHIP. An employee, a carpenter, engaged on work about the construction of a ship, is guilty of contributory negligence, where he, with full knowledge of the danger, voluntarily assumes a position underneath a steel plate weighing two thousand pounds, momentarily suspended while being put in place; no emergency or order in justification being shown.

SAME—KNOWLEDGE OF RELATION. An employee, injured through the negligence of employees of an independent contractor, cannot sustain an action against his employer by showing that he was not aware of the relation between the defendant and the independent contractor.

Appeal from a judgment of the superior court for King county, Morris, J., entered September 16, 1904, granting a nonsuit at the close of plaintiff's case, in an action for personal injuries sustained by an employee while working under a suspended steel plate being put in position by an independent contractor. Affirmed.

*Benson, Hall & Higgins,* for appellant.

*Kerr & McCord,* for respondent.

Root, J.—Appellant was employed as a carpenter by respondent, a corporation, engaged in building the battleship "Nebraska" for the United States government. Respondent had in its employ over seven hundred men, some working by the hour, some by the day, and some by contract, on certain portions of the work, for fixed amounts. Appellant's duties required him to go from place to place about said ship, putting in and changing stanchions or shores, used to support the vessel in position. One Kelly had a contract from respondent to place, upon the sides of the ship, certain steel plates. He was to be paid a gross sum for doing said work. He was given full power to hire and discharge men, and had the control and supervision of them while engaged in the work, they all being subject, however, to the general rules of the shipyard. The work was required to be satisfactory to respondent and the United States government, both of whom had superintendents about the premises. The appliances used by Kelly were furnished by respondent, although the written contract between them—which appears to have been the only contract governing them—is silent as to who should furnish the tools and appliances.

On the 16th day of November, 1903, while appellant was working in the vicinity of some of Kelly's workmen, he was seriously injured by the falling of a steel plate, weighing about two thousand pounds. In raising this plate, a chain and tackle were fastened to an iron bar, placed lengthwise across a manhole, extending about nine inches on each side of said opening, which was eighteen inches in diameter. By chains extending from the tackle to the plate, the latter was raised from the floor to the side of the ship, where said plate was to be adjusted. While the plate was suspended in the air, appellant helped shove and "steady" it awhile, and then proceeded to do something about his own work under said suspended plate.

In attempting to get the plate into proper position on

the side of the vessel, one of the workmen, in using a wrench as a lever to push the plate along, let said wrench slip, which caused the plate to swing back on the chain, and, by its swinging motion and momentum, to occasion a slipping of the iron bar supporting the tackle. One end of the bar thereupon came through the opening, releasing the tackle, and permitting the plate to fall.

It appears by the evidence that an appliance, known as a grappling hook or as a clamp, could have been used instead of the iron bar; and, if properly adjusted, would have avoided this accident. Two of the workmen went to the tool house to get such an appliance but were told by the keeper in charge thereof that there was no such appliance there at that time. It appears by the evidence that there were probably such appliances about the yard. No request for such was made of any superintendent, foreman, or officer of respondent. The workmen selected the iron bar from certain of respondent's material found near by.

Appellant instituted this action against respondent to recover damages occasioned by reason of the injuries sustained as aforesaid. At the close of his case, a motion for nonsuit was sustained by the trial court. From the judgment of dismissal, this appeal is taken. It is claimed by appellant that it was respondent's duty to furnish a reasonably safe appliance to Kelly for raising these plates, and that, inasmuch as it did not do so, it must respond in damages to appellant for the injuries he sustained.

In the first place, the only contract shown to exist between respondent and Kelly does not place upon respondent any obligation to furnish any tools or appliances. In the next place, it does not appear that respondent, or any of its officers, superintendents, or foremen refused to furnish necessary and safe appliances. The unsafe appliance was not furnished by respondent. There is no evidence that respondent, or any of its agents, knew anything about Kelly's men having taken or used the iron bar in question. These

men went upon their own motion and selected the bar in question. There is nothing to show that grappling hooks could not have been obtained, if requested of respondent's officers or foremen. It appears that there were doubtless some of these appliances on the premises. If there was any obligation on the part of respondent to furnish Kelly with appliances, it was a duty due to Kelly, and for any breach thereof it would be holden to Kelly, and not to appellant. That Kelly was an independent contractor is shown by the written contract in evidence. This relationship was not changed by the fact that general supervision was exercised over his work by respondent and the government, to both of whom the result of his work was required to be satisfactory. The choice of men, appliances, and methods was left to him, and for any negligence touching any of these matters, he, and not respondent, was answerable.

Even conceding it to have been the duty of respondent to furnish Kelly with appliances—and this is not shown by the evidence—this duty would be fulfilled by delivering suitable appliances to Kelly upon his request therefor. If there were such appliances provided in the yard where Kelly could secure them upon demand, it was a sufficient compliance with the duty. *Steeples v. Panel etc. Box Co.*, 33 Wash. 359, 74 Pac. 475. It appears that respondent, by some official, gave Kelly's workmen an order on the keeper of the tool house for one of these grappling hooks. None was there at the time. Instead of going to some foreman and asking as to where such an appliance could be found, these men went to a pile of iron near by, and selected the bar which was used. It was not the duty of respondent to keep watch of Kelly and deliver his appliances at the place of use.

As an independent contractor, Kelly owed his servants the duty of furnishing reasonably safe appliances. Toward others working in his vicinity, he owed the duty of ordinary care. Respondent had the right to presume that Kelly would

observe these obligations in the conduct of his work. If it were respondent's duty to furnish suitable appliances, it would have the right to presume that Kelly would request them from some one having authority, when they were needed, if they were not at hand. As the written contract did not require respondent to furnish appliances, the fact that respondent had been doing so would not render it liable · in a given instance where the contractor or his servants selected an unsafe device. We can find nothing in the evidence showing any breach of duty on the part of respondent in the matter of furnishing, or neglecting to furnish, appliances. Such a breach must be shown before negligence is established. *Singleton v. Felton,* 101 Fed. 526.

A breach of respondent's duty to furnish appellant a safe place to work is suggested. That the master is under obligations to give the servant a reasonably safe place to work is, of course, a well established principle of law. But where the servant is in as good a position as the master to ascertain and understand the situation, and does equally well know and appreciate the existing conditions, he cannot be heard to complain from injuries sustained by working therein. *Wilson v. Northern Pac. R. Co.,* 31 Wash. 67, 71 Pac. 713; *Anderson v. Inland Tel. etc. Co.,* 19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410; *Tham v. Steeb Shipping Co., ante,* p. 272, 81 Pac. 711.

In the case of *Wilson v. Northern Pac. R. Co., supra,* this court, speaking by Mount, J., said:

"If defendants are liable at all, they are liable because of some neglect of duty owing from defendants to plaintiff. . . . They were not obliged to guaranty the safety of the place, but they were in duty bound to make a reasonable inspection. . . . His [the servant's] inspection was the inspection of a reasonably careful man. The foreman, no doubt, also inspected the ground in the same way for the same purpose, and saw the same as the plaintiff saw, and came to the same conclusion. . . . When the danger is not known, and not suspected, and where there

are no circumstances which would cause a reasonably careful man to investigate and ascertain the danger, the law
will not impute knowledge of danger where the knowledge
is not shown in fact. When reasonably careful men conduct
their business in a reasonably careful manner, there is no
negligence."

In *Anderson v. Inland Tel. etc. Co., supra,* this court
speaking through Dunbar, J., said: ". . . if the employee does know of the defect, or has equal means of
knowing with the employer, then, certainly, it is his unquestioned duty to investigate before proceeding;" and the
following quotations were made with approval: "Where
the danger is alike open to the observation of all, both
master and servant are upon an equality, and the master
is not liable for an injury resulting from the dangers of
the business,"—taken from *Griffin v. Ohio etc. R. Co.,* 124
Ind. 326, 24 N. E. 888. "A master is not liable for injuries to his servant while using machinery in the employment, if the servant has the same knowledge of its defects, or the danger incident to its use, as the master, or
if in the exercise of due care, he ought to have such knowledge. . . .,"—quoted from Wood, Master & Servant, §
366. "Knowledge on the part of the employer, and ignorance on the part of the employee, are of the essence of
the action . . .,"—quoted from Beach, Contributory
Negligence, § 346.

In the case of *Tham v. Steeb Shipping Co., supra,* this
court upheld an instruction of the trial court given in the
following language:

"If you find from the evidence that the danger was alike
open and obvious to the plaintiff and to the defendant, both
the plaintiff and the defendant are upon an equality, and
the master is not liable for an injury resulting from the
dangers incident to the employment."

In the case before us, there was no occasion for respondent's supposing that Kelly would be using the iron bar
mentioned. Respondent was concerned with the results of

Kelly's work, but not with the details of its performance. It was not required to know that he was using an unsafe appliance at that particular time, and there is no evidence that any of its officers or agents did know. Appellant was at the place. So far as the evidence shows, he was in a better position to know of the character of this appliance and its dangers than any officer or agent of respondent. Appellant's work was constantly being changed from place to place in removing and adjusting the shores about the ship. This particular place was rendered unsafe only at the moment when they began to elevate this heavy plate. The entire situation may have been thoroughly inspected and found safe a minute before, so far as the evidence shows. Respondent was under no obligation to have an officer constantly follow appellant around to protect him from situations made dangerous by occurrences unusual and unexpected by either master or servant. It was daylight, and appellant could have seen this iron bar as well as any foreman. Seeing it, he would know that there was more or less danger in its use. The very nature of the work of building a ship necessitates constant changes. A place perfectly safe one minute may become extremely dangerous the next by the ordinary and necessary operation of the work, and without fault on the part of any one. A servant working in the capacity of this appellant knows all this, and must be held to be, to a certain extent, his own inspector. He cannot complain because the master, with less opportunity than he, has failed in a given instance to detect or anticipate an unexpected occurrence. *Weideman v. Tacoma R. & Motor Co.*, 7 Wash. 517, 35 Pac. 414; *Decker v. Stimson Mill Co.*, 31 Wash. 522, 72 Pac. 98; *Cully v. Northern Pac. R. Co.*, 35 Wash. 241, 77 Pac. 202. There is no evidence to show that respondent knew, or had any reason to suspect, that appellant's working place had been made dangerous by Kelly, or any one. It therefore follows that appellant's action cannot be sustained on that ground.

The defenses of contributory negligence and assumed risk are interposed by respondent, and are not without support in the evidence. Appellant offers no good reason for standing under the suspended steel plate. He knew its tendency to swing—as he admits that he helped to "steady" it. It would seem that common prudence ought to suggest to any person of ordinary intelligence the propriety of "standing from under" while a two-thousand pound weight was swinging over his head in the air. Where a heavy steel plate is being handled with chains and other metallic appliances, in the manner open and apparent as was this, the risk of danger from standing under it would be evident to any one. To be sure, there was no certainty of injury, perhaps no probability; but there was an obvious possibility, and the serious character of the danger, in case the heavy plate should fall, would be apparent to any person of ordinary intelligence. It is inconceivable that any person of ordinary prudence would have stood under such a swinging mass of steel. No emergency, direct orders, or unusual occurrence is shown in justification of appellant's presence in a place of such danger.

It is urged by appellant that he did not know that Kelly was an independent contractor, and that he had a right to suppose that Kelly's men were servants of respondent, and that it was respondent's duty to furnish them with safe appliances. We are shown no facts or law making it the duty of respondent to inform appellant that Kelly was such contractor. None such occur to us. Neither has our attention been called to any authority giving a servant a right of action for a breach of duty on the part of the master toward an independent contractor and his men, said servant not working for, or under the direction of, said contractor.

Perceiving no error in the ruling of the trial court, the judgment is affirmed.

MOUNT, C. J., RUDKIN, CROW, and HADLEY, JJ., concur.