[No. 6338.   Decided February 5, 1907.]

MAHLON J. JONES, *Respondent*, v. MORAN BROTHERS
COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—OPEN HATCH—CON-
TRIBUTORY NEGLIGENCE.   A painter employed for two or three days
in painting a vessel is guilty of contributory negligence, as a matter
of law, precluding a recovery, where it appears that he fell through
an open hatch six feet square, while passing through a compartment
so dark that he could not see the hatch, which was surrounded by
coamings six to twelve inches high, he having procured no light, as
he knew or should have known that he might encounter a hatch and
could have been apprised thereof by the coamings if he had been pro-
ceeding cautiously (DUNBAR J. and HADLEY, C. J., dissenting).

Appeal from a judgment of the superior court for King
county, Hatch, J., entered March 26, 1906, upon the verdict
of a jury rendered in favor of the plaintiff, after a trial on
the merits, in an action for personal injuries.   Reversed.

*Richard S. Eskridge* (*Philip Tindall,* of counsel), for ap-
pellant.

*John E. Humphries* and *George B. Cole,* for respondent.

ROOT, J.—This is an appeal from a judgment awarding
respondent damages for personal injuries sustained by fall-
ing through a hatch upon the steamship "Tacoma," which
was being overhauled at appellant's shipyard in Seattle.   Re-
spondent was a man forty-three years of age, and by trade
a painter, and was employed by appellant to do painting on
said steamship.   On the day in question he was working be-
tween decks.   At the close of the noon hour, he went down
the stairway from the upper deck to the one next below, and
started to pass through a dark compartment on his way
toward his place of work.   In the compartment through
which he was passing there was a hatch slightly over six

[1]Reported in 88 Pac. 626.

feet square, and it was through this that he fell to the deck below.    At the time of the accident this compartment was, according to the testimony of respondent's witnesses, "pitch dark," and the hatch was uncovered and unguarded except by the hatch-coamings.    Permitting this compartment to be in darkness, and the hatchway to be uncovered and unguarded, is alleged as the negligence of appellant, by reason of which respondent seeks to recover.    Appellant denies that these matters constituted negligence on its part, and urges the defenses of contributory negligence and assumed risk.

The leaving of a hatch open and unprotected is not, under all circumstances, negligence.    The principal purpose of a hatch is to permit access to and from the respective decks which it connects; and it is not always necessary or practicable to surround one with barriers.    But it is unnecessary for us to pass upon the question of whether the appellant was negligent in this particular, in view of our conclusion upon other questions involved.    If this compartment was "pitch dark" when respondent entered it, he, of course, knew and appreciated that fact, and cannot hold the master for any results flowing directly and solely from that condition.

Assuming that appellant was negligent, we are then brought to the question of whether the respondent was guilty of contributory negligence in attempting to pass through this dark compartment without a light, and in a manner permitting him to fall into this opening.    Respondent was a painter of many years' experience, and had been working upon this particular ship for two or three days.    This experience would be sufficient to charge him with knowledge that ships are builded with hatches.    When he started through this compartment he knew, or by the exercise of ordinary intelligence should have known, that he was liable to encounter a hatch.    His witnesses say that it was so dark that the hatch could not be seen.    Consequently respondent could not tell whether it was open or covered.    This being the situation,

what would be the natural course of a man of ordinary prudence? It seems to us to be beyond question that such a man would either secure a light or proceed through the darkness in a slow and cautious manner. It is admitted that this hatch was surrounded by hatch-coamings of from six to twelve inches in height. This might not be sufficient to prevent a man from falling through the opening, if he were going in a rapid or careless manner; but if he were proceeding with that caution which an ordinarily prudent man would employ under like conditions, the coamings would apprise him of the presence of the hatch and enable him to avoid any danger therefrom.

There is no evidence in the case as to how respondent happened to fall. He was present in the courtroom during the trial, but did not go upon the witness stand, his attorneys claiming that his mental condition, by reason of the injuries sustained, rendered him unable to give an intelligent and connected account of what occurred. In going through the room where injured, he was preceded by two other workmen, one of whom was his principal witness upon the trial, the other not appearing as a witness. Respondent's said witness, Matson, testified that a workman by the name of Hamm preceded him, and that he was a short distance ahead of respondent; that the room was too dark to see the hatch, and that he, Matson, crossed the hatch by walking on a board eight or ten inches wide. He heard respondent fall, but did not know how or why he fell. There is no evidence that respondent was obliged to pass hurriedly through the room, that he was excited, or that any condition existed necessitating any haste in his movements. His witnesses testified that the hatch was open in the forenoon and they saw through it and observed men working on the deck below with lights. It was in evidence that there were candles and lanterns about the ship, and there is nothing to indicate that the same were not available to respondent. We cannot tell whether respond-

en't was attemptting to walk across the hatch on the plank as his witness Matson did, or whether he stumbled over the coamings, or stepped directly into the opening, or whether he was running, or as to whether he was precipitated into the hatch by some other person. Ordinarily it would seem that the evidence should afford information upon some of these matters. But, giving respondent the benefit of all the inferences that may properly be drawn from the evidence as to these and all other matters appertaining to the affair, we cannot escape the conclusion that the respondent, by his lack of care and caution, contributed to the cause of his injury. Viewing the occurrence in the light most favorable to respondent, we do not think it can be said that two reasonable minds could differ upon the question of whether or not a man of ordinary prudence aboard ship would attempt to go through a dark compartment, containing a hatch of which he knew, without first procuring a light or regulating the speed of his movements so as to be protected by coamings such as surrounded this opening. We think the evidence of his own witnesses establishes facts which defeat his right to recovery.

The judgment of the honorable superior court is reversed, with instructions to dismiss the action.

CROW, FULLERTON, RUDKIN, and MOUNT, JJ., concur.

DUNBAR, J. (dissenting)—I dissent. I think in the first place the appellant was guilty of culpable negligence in leaving the hatch open and unprotected at the noon hour when the workmen were compelled to pass backward and forward in close proximity to it, and when it was so dark the opening could not be seen, and that it was dark must be presumed by this court from the fact that the testimony on that question was conflicting, and for the purpose of this review we are bound to accept the testimony submitted by the respondent. The majority opinion says that the respondent had sufficient experience to charge him with knowledge that ships

are builded with hatches. This is a statement of a proposition which I should not think of controverting. A more pertinent inquiry, however, would be, was his experience as a painter sufficient to charge him with knowledge that it was the custom for shipowners to leave the hatch open in dark compartments at the time the hatch was not being used and when it was the duty of the employees to pass through such compartments, and the appellant not having attempted to establish such a custom, was not the respondent warranted in assuming that the master had furnished him a safe place, and that it was therefore not necessary for him to make an investigation of the place.

The ordinary individual has experience enough to know that a dog is built with teeth, and a bull with horns, but such knowledge does not raise a presumption that a vicious dog will be chained in a dark pathway which he has to traverse, or that a combative bull will be turned loose in an open pasture or lot through which his pathway leads. Admitting, as we must, that it was dark, there is no question of exposed danger in the case. So far as the coamings were concerned they were not high enough to be any protection whatever.

The cases cited by appellant are not in point, for instance, *Steeples v. Panel etc. Box Co.*, 33 Wash. 359, 74 Pac. 475, was where the plaintiff was in charge of the platform from which he fell. He was the man whose duty it was to keep it light, and who had been working about the platform for two months and must necessarily have observed that there was no railing on the platform. How different, so far as the question of notice is concerned, was that case from this. In this case the respondent had no control of the hatch nor was he working on, with, or about the hatch. His work was in another department entirely disconnected with the hatch. There is no similarity whatever in principle between the two cases. *Tham v. Steeb Shipping Co.*, 39 Wash. 271, 81 Pac. 711, is also relied upon by the appellant. There it was decided that

where the dangers incident to the employment are alike open and obvious to the master and servant, the parties are upon an equality, and the master is not liable for an injury to the servant resulting therefrom. Conceding the justness of this rule, it seems to me to have no application whatever to the case at bar, without the court is to assume the very question at issue here, viz., whether or not the respondent had notice of the danger.

The question of contributory negligence was properly submitted to the jury, and in my opinion the reversal of this judgment cannot be justified except upon the assumption by the members of this court that they are individually better qualified to determine questions of fact than are the jurors who tried the case and the trial judge who declined to withdraw the case from their consideration. The merits of this controversy have, I think, been settled by the law which has bestowed upon the jury the right to weigh testimony and determine questions of fact, giving to the trial court alone authority to interfere with their judgment as to the weight of the testimony. The judgment should be affirmed.

HADLEY, C. J., concurs with DUNBAR, J.