[No. 7031.   Decided April 29, 1908.]

CHARLES A. WOELFLEN, *Respondent*, v. LEWISTON-CLARKSTON COMPANY *et al.*, *Appellants*.[1]

APPEAL—BOND—SUFFICIENCY. Upon appeals from the final judgment and from an order denying a new trial, only one bond on the appeal from the final judgment need be given.

SAME—OBLIGEE. An appeal bond by defendants is sufficient without naming as obligee a codefendant dismissed from the action and not joined in the appeal.

SAME—SUPERSEDEAS—AMOUNT. That an appeal and supersedeas bond is not large enough to cover interest accruing is not ground for dismissal of the appeal.

SAME. An appeal and supersedeas bond by defendants need not be large enough to cover the costs of a codefendant dismissed from the action and not joining in the appeal.

APPEAL—PARTIES—NOTICE—STATEMENT OF FACTS—SERVICE. A coparty dismissed from the action is not an adverse party upon whom service of notice of appeal, or of the statement of facts, need be made.

MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—SAFE PLACE—LIGHTS—DUTY TO DISCOVER DANGER—VICE PRINCIPALS. An experienced electrician, who received a shock from highly charged wires while superintending the removal of a burned out transformer in a power house, is guilty of contributory negligence, as a matter of law, where it appears from his testimony that he went upon a cross-arm four or five feet below the ceiling, that he was standing over three high tension wires known to him to be carrying a heavy load, and from which there were small wires or lightning arresters leading through the roof which were commonly found in all power houses, that he came in contact with the small wires, and that it was too dark in that place for him to see the

[1]Reported in 95 Pac. 493.

small wires; since it was recklessness to go into a dark place where he knew there were dangerous wires and might be others, there being no direction or necessity that he do so, and since he was in charge as a vice principal and was bound to see to the safety of the place.

Appeal from a judgment of the superior court for Asotin county, Miller, J., entered May 14, 1907, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries. Reversed.

*Sturdevant & Bailey* and *I. N. Smith*, for appellants.

*Elmer E. Halsey* and *Ben F. Tweedy*, for respondent.

Root, J.—This is an appeal from a judgment in favor of the plaintiff, in an action brought to recover damages for personal injuries sustained in the power house owned by the Lewiston Light Company, and operated by the Lewiston Water & Power Company, in Asotin county, Washington. Said appeal is prosecuted by the latter company and the Lewiston-Clarkston Company, which was incorporated subsequent to the time of plaintiff's injury, and which it is claimed took over the property of the other two companies subject to all liabilities.

Respondent has interposed a motion to dismiss the appeal, upon the following grounds, to wit: (1) That there are two appeals, one from the final judgment, and one from the order denying a new trial, with only one bond given on the appeal from the final judgment; (2) that the only obligee mentioned in the bond is respondent Woelflen, whereas the bond should run to him and to the Lewiston Light Company, as to which the action was dismissed in the trial court and which did not join in the appeal; (3) that the bond, being conditioned both as an appeal and supersedeas, is insufficient in amount, inasmuch as it is not in an amount large enough to cover interest on the judgment from date of entry; (4) that as costs were allowed to the Lewiston Light Company upon dismissal of the action as to it, these costs must be

taken into consideration and covered by the stay bond; (5) that the Lewiston Light Company was, after the dismissal of the action as to it, an adverse party to these appellants, and that the attorneys who had appeared for it and the appellants had no right to accept service of notice of appeal for that company. We do not think the motion can be sustained upon any or all of the grounds assigned. Bal. Code, §§ 5081, 5082, 6500-6506, 6521 (P. C. §§ 720, 721, 1049-1054, 1069) ; *Edgecomb v. Creditors*, 19 Nev. 149, 7 Pac. 533 ; *Williams v. Dennison*, 86 Cal. 430, 25 Pac. 244 ; *Nolan v. Montana Cent. R. Co.*, 24 Mont. 327, 61 Pac. 880 ; *Paland v. Chicago etc. R. Co.*, 42 La. Ann. 290, 7 South. 899 ; *Oleson v. Wilson*, 20 Mont. 544, 52 Pac. 372, 63 Am. St. 639 ; *Berghoff v. McDonald*, 87 Ind. 549 ; *Westland Publishing Co. v. Royal*, 36 Wash. 399, 78 Pac. 1096 ; *Douglas v. Badger State Mine*, 43 Wash. 715, 86 Pac. 858 ; *Doremus v. Root*, 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649. The motion to dismiss is overruled.

Respondent also moves to strike the statement of . facts. This motion is based upon the ground that an order of extension of time for filing was made upon a motion no notice of which was served upon the Lewiston Light Company, and that the proposed statement was not served upon that company. Respondent contends that this company was an "adverse party," as contemplated in Bal. Code, § 5058 (P. C. § 675). We are unable to agree with this contention. We perceive no reason for its being considered an adverse party to the appellants or either of them, and no reason for requiring the statement to be served upon it, or notice to or service upon it of any motion concerning the statement of facts or anything else having to do therewith. *Doremus v. Root*, *supra*. The motion to strike the statement of facts is denied.

The plaintiff was employed as superintendent or general foreman in charge of the company's outside work, such as erecting poles and stringing wires. In view of the conclusion which we have reached, it will be necessary to refer to only

one of the defendants, the Lewiston Water and Power Company, which we will speak of as "the company." In the power house were three transformers, each five feet high and four feet square, composed of a case built of corrugated iron, resting in a frame made of angle iron, and in each case there was a "core," a receptacle containing a coil of wires immersed in oil for insulating and cooling purposes. The three transformers were located close together. In the operation of the plant, the transformer farthest to the south burned out. The manager of the company telephoned from Lewiston, directing plaintiff to take such assistance as he needed to the power house and lift the core out of this transformer so that the electrician could repair it. The manager sent a large block and tackle, weighing about five hundred pounds, consisting of pulleys and chains, for the purpose of doing this work. The plaintiff was an experienced electrician or worker about electrical plants and appliances, having been in that work for seventeen years, during several of which he was superintendent of a plant in Wisconsin, and later having assisted in putting together the transformers for this defendant company at Lewiston, Idaho.

After being directed as aforesaid by the manager to take the core out of this transformer, he took men for that purpose and was assisted by others whom he found at the power house. The work was undertaken under his direction and supervision. Overhead at the place where the ceiling would naturally be, there were joists running across the building, and upon these were some boards making a floor or platform over the transformer. The plaintiff went up to this position after having braced the joists, or caused them to be braced and supported so that the weight could be lifted by attaching the block and tackle to the joists. To the latter a small block and tackle were fastened, with which it was intended to haul up the large chain block which was to be used in raising the heavy core. A noose was made in the rope which was to be caught in an iron hook of the block and tackle. In order to

hook them together, plaintiff climbed down from the platform where he had been standing, to a cross-arm which projected toward the center of the room from the southeast corner of the power house and about four or five feet below the ceiling joist.   Upon this cross-arm there were three high tension wires each carrying ten thousand volts of electricity.   That they were there and so charged with electricity was known to the plaintiff at that time, as he admits in his evidence.   All of the transformers had been "killed down," as the expression is used by the electricians, meaning that the current of electricity had been cut off from them.   This work was being done in the evening, the room being somewhat lighted by certain small lights but principally by a two thousand-candle power arc light, which is about the size and character of the ordinary street light.   The room was in size about twenty-five by fifty feet.   When plaintiff jumped down from the cross-arm, he stood with one foot on one side and one on the other of one of these highly charged electric wires.   Connected with these were two small wires leading up to and through the roof. These uprising wires are commonly called "risers" or "lightning arresters," and are commonly found in all power houses. Plaintiff testified that he never knew of a power house without them.   While plaintiff was attempting to connect the noose of the rope with the hook aforementioned, he received an electric shock and was seriously injured.   At the time, he did not know how he received this shock.   On the witness stand he said, however, that he now knew that his hand came in contact with one of these risers.   He testified that he did not know of the presence of these lightning arresters, had never been told of their being there, and that he did not see them because it was too dark to permit of their being seen. Other witnesses who were working there under his direction at the time testified that they saw the wires, and that they were plainly visible.

It is urged by plaintiff that the company was guilty of negligence in sending him, without warning, into a place that

was dangerous by reason of the presence of these two wires unknown to him. The appellants urge, first, that there were several ways by which this work could have been done, any one of which would have been a perfectly safe method, but that plaintiff neglected to choose or follow a safe plan, but voluntarily chose a dangerous one. They say that a perfectly safe method would have been to have moved the transformer out from under these highly charged electric wires and to have lifted out the core at a place where there would have been no occasion to come near any of the wires. There was some evidence going to show that this method was suggested to the plaintiff. It is also urged by the appellants that the physical conditions, as well as the great preponderance of evidence, show that there was sufficient light to have seen these two perpendicular wires, and that it was carelessness and recklessness on the part of the plaintiff to have come in contact with either of them. They also urge that there was no occasion for plaintiff to leave the platform and go down upon this arm where he would be in close contact with dangerous wires. It will not be necessary for us to pass upon these questions. For another reason, we believe that the evidence of the plaintiff himself must defeat his recovery.

Assuming that the place where plaintiff went was too dark to permit of his seeing these two wires, we think that the going of an experienced electrical workman into a dark place of this kind where he knew there were several highly dangerous wires and might be others, was in itself a grossly negligent act. He was not directed as to the particular manner or place in which he should do the work. He was sent there in charge of the work, and had supervision of all the men who were assisting to accomplish it. He was not only in duty bound to exercise ordinary care to protect himself, but he likewise owed a duty, both to his employer and to the men working under him, to use ordinary care in choosing and carrying out the methods of doing the work. To illustrate: suppose on account of the darkness of the place, he had received a shock

and fallen upon one of the workmen, or dropped something, injuring the latter. Doubtless the injured workman would have had a cause of action against the company. Such workman could have alleged that plaintiff, as vice principal of the company, owed a duty to inspect the premises and not to go into a dark place where he knew, or might have known by reasonable inquiry or inspection, that there were dangerous electrical wires which might cause him to fall or drop some of the tools or appliances on one of the workmen below. Plaintiff being in charge of the work and not being limited by his orders as to the matter of light and the methods of handling the apparatus necessary, it was his duty first of all to see that the premises were in a reasonably safe condition for the doing of the work. Knowing, as he says he did, of the presence of the three large, heavily charged wires, and knowing that power houses were usually equipped with risers or lightning arresters, and without any reason to suppose that this power house was an exception to the rule, it was incumbent upon him to either secure sufficient light to reveal the true condition of the surroundings of this cross-beam before he climbed down upon it, or to make inquiries or an examination of some kind by which the presence of dangerous wires would have been known to him. Had he been working under the immediate direction of a superior officer, without any knowledge of the situation, and had obeyed an order to get upon this beam, relying upon the duty of the master to have the place safe, a very different question would be presented.

It is undoubtedly the duty of the master to use ordinary care to provide a reasonably safe working place for his servant. Where the master is a corporation this duty must be performed by it through certain persons who become, by reason of the duty thus imposed upon them, vice principals of the master, and it is upon these vice principals that the company, as such master, relies for information and for the proper preparation and care necessary to have the premises

in the safe condition required by law. When the master, whether a natural person or a corporation, authorizes one of its superintendents to take charge of and supervise and carry out a certain undertaking in connection with its industrial operations, it becomes the duty of that servant to perform as and for the master those duties which the law places upon the latter. In this instance the plaintiff, being the superintendent in control of this undertaking, was charged with the duties just mentioned; and in failing to provide a sufficient amount of light or to have it properly adjusted, or to in some other manner ascertain the dangerous conditions of the working place, he clearly neglected his duty to his employer.

Plaintiff claims that he was not familiar with the interior arrangements of the power house; that, although he had been working for the company for some years, he had not on an average been in the power house more than two or three times a month. He testified, however, that the foreman or engineer in charge of the power house was working with him and under his directions at the time of the accident, and there is no reason shown why he may not have learned from such assistant all about the conditions of the wires had he desired so to do; and no reason is given for not adjusting the lights so that all the wires in that vicinity could have been distinctly seen.

It is well settled that a servant cannot recover because of the dangerous condition of a working place, when such condition is as obvious or well known to him as to the master, or by the exercise of reasonable care by him would have been, or where it was the duty of the servant to ascertain as to the dangerous condition of the place, which duty he has neglected. In the case of *French v. First Avenue R. Co.*, 24 Wash. 83, 63 Pac. 1108, an engineer, recently placed in charge of a street railway power house having a large amount of machinery, was killed, and one of the reasons assigned for liability was that the place was insufficiently lighted and by reason thereof he did not notice certain defects that occasioned his fall into a large wheel. This court said: "If there was

not sufficient light the engineer knew it," and laid stress upon
the fact that the machinery in question was under the control
of the engineer himself, saying, among other things: "It
certainly is the duty of the engineer to observe, examine and
understand the machinery which he is operating." In that
case the engineer in charge was the person injured. In the
case at bar the engineer ordinarily in charge of the room was
working under this plaintiff who was in charge of the work
then being done. The duty to know of the condition of the
working place rested upon this plaintiff equally as much as
it did upon the engineer in the case just cited.

The case of *Anderson v. Inland Tel. etc. Co.*, 19 Wash. 575,
53 Pac. 657, 41 L. R. A. 410, was one where a lineman was
injured by an electric shock received as a result of a broken
insulator on a telephone pole. The opinion has a strong bear-
ing upon the facts of the case at bar. Among other things,
the court said:

"Corporations of this kind act through employees. Neces-
sarily they cannot act in any other way. An inspection of
their lines and posts and insulators must be made by the em-
ployees. . . . The respondent testified that he knew the
power of electricity, and the danger that would be incurred
by coming in contact with a live wire; that he knew that, if
the insulator broke, the result would be that the wire which
he touched would be charged; and he knew also that porcelain
insulators frequently did break. It seems to us that this
brings him within the rule which we have announced above—
that when he accepted the employment, that was necessarily
hazardous, he assumed this risk, which under all the testimony,
was an ordinary risk, and that he did not exercise the discre-
tion which he ought to have exercised in testing this wire.
. . . While there is no gainsaying the rule that under
ordinary circumstances the employee has the right to rely
upon the fact that the master will furnish him a safe place
to work and safe appliances, yet the law does not intend that
this shall be a blind and unreasonable reliance, but that rea-
sonable men shall exercise in a reasonable manner the faculties
of which they are possessed. It seems to us it would only
have been such reasonable exercise of prudence upon the part

of the respondent in this case to have tested this wire before he touched it. . . . In this case it was equally within the knowledge of the master and the servant that this was a dangerous employment, and it cannot be said that there was negligence on the part of the master, and absence of rashness on the part of the servant, or that the servant used his skill, to protect himself in the course of his employment. He had sufficient skill, according to the undisputed testimony, to protect himself, and he had the apparatus at hand for testing the insulator and the wires. . . . We think, from an investigation of the whole, case, that it appears from undisputed testimony that plaintiff did not exercise reasonable care in the investigation of the dangers which he knew were incident to his employment, and that had he exercised such care, and made the tests which reasonable prudence would have dictated, he would have had knowledge of the danger which beset him."

In *Jones v. Moran Bros. Co.*, 45 Wash. 391, 88 Pac. 626, a painter aboard a ship undertook to walk through a dark compartment between decks where there was a hatchway into which he fell. As he knew there was a hatchway and knew that it was dark, this court held that, by going through there without a light and at a speed so great as to cause him to stumble over the coamings of the hatch, he was negligent, such negligence on his part defeating a recovery.

In *Steeples v. Panel & Folding Box Co.*, 33 Wash. 359, 74 Pac. 475, plaintiff fell off a platform in the dark. He claimed that he did not know it was without a railing, and was going to look for his hat which had blown off. Among other things, the court said:

"When he picked up the lantern to look for his hat, instead of using the lantern, he negligently moved without bringing the lantern to bear. There were other lanterns there, all under his supervision and care, and it was his duty to prepare all the light that was necessary for the work which was being done. Consequently he cannot complain that his injury was caused by not properly lighting the platform. . . It is true the plaintiff testifies that he did not know that the platform was without a guard, but a plaintiff cannot recover simply by making a statement of that kind,

if, under the circumstances, it was his duty, as a reasonably prudent man, to have made such an examination as would have resulted in the desired information."

26 Cyc. 1169, says this:

"It is not necessary that the servant should be warned of every possible manner in which injury may occur to him, or of risks that are as obvious to him as to the master, or which are readily discoverable by him by the use of ordinary care, with such knowledge, experience, and judgment as he actually possesses, or as the master is justified in believing him to possess."

Thompson, Commentaries on the Law of Negligence, vol. 4, § 4063, says:

"The master is not under any duty to warn or instruct servants who have already enjoyed an ample opportunity to become acquainted with the danger. Servants are expected to keep their eyes open and exercise such a reasonable care for their own safety as their situation permits."

See, also, *McClellan v. Gerrick*, 48 Wash. 524, 93 Pac. 1087; *Weideman v. Tacoma R. & Motor Co.*, 7 Wash. 517, 35 Pac. 414; *Olson v. McMurray Cedar Lumber Co.*, 9 Wash. 500, 37 Pac. 679; *Smith v. Hecla Mining Co.*, 38 Wash. 454, 80 Pac. 779; *Bier v. Hosford*, 35 Wash. 544, 77 Pac. 867; *Robare v. Seattle Traction Co.*, 24 Wash. 577, 64 Pac. 784; *Miller v. Moran Bros. Co.*, 39 Wash. 631, 81 Pac. 1089, 1 L. R. A., N. S., 283; *Bullivant v. Spokane*, 14 Wash. 577, 45 Pac. 52; *Ford v. Heffernan Engine Works*, 48 Wash. 315, 93 Pac. 417; *Tham v. Steeb Shipping Co.*, 39 Wash. 271, 81 Pac. 711; *McGorty v. Southern New England Tel. Co.*, 69 Conn. 635, 38 Atl. 359; *Moulton v. Gage*, 138 Mass. 390; *Larsson v. McClure*, 95 Wis. 533, 70 N. W. 662; *Griffin v. Ohio & M. R. Co.*, 124 Ind. 326, 24 N. E. 888; *Dixon v. Western Union Tel. Co.*, 68 Fed. 630; Wood, Master & Servant, §§ 328, 366; Beach, Contributory Negligence, §§ 299, 346; 1 Bailey, Master & Servant, § 62; 20 Am. & Eng. Ency. Law (2d ed.), pp. 78, 96, 130, 131, 142, 149; 26 Cyc. 1169, 1171, 1188, 1202, 1236, 1241; 4 Thompson,

Com. on the Law of Negligence, §§ 4057, 4062, 4063, 4076, 4079.

The judgment as against these appellants is reversed, and the case remanded with instructions to dismiss the action.

HADLEY, C. J., FULLERTON, MOUNT, and CROW, JJ., concur.