[No. 11526.  Department One.  April 29, 1914.]

PATRICK J. ACRES, *Respondent*, v. FREDERICK & NELSON, INCORPORATED, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—DEFENSES—INDUSTRIAL INSURANCE—COMPLIANCE WITH LAW.  In an action by a servant against a master for personal injuries, an objection that the industrial insurance law (3 Rem. & Bal. Code, § 6604-1 *et seq.*) withdraws this class of actions from the courts cannot be made where it was not raised in the pleadings or suggested below, it being defendant's duty to plead and prove a compliance with the act, in view of Id., § 6604-8, providing that an employer shall not be entitled to the benefits of the act during the period of any default in the payment of premiums under § 4, but shall be liable to suit by the injured workman.

[1]Reported in 140 Pac. 370.

MASTER AND SERVANT—SAFE PLACE TO WORK—PROXIMATE CAUSE —NEGLIGENCE—EVIDENCE—SUFFICIENCY. . Where an employee fell down an elevator shaft in a warehouse, at a time when a broken casting prevented the automatic raising and lowering of the elevator gates, and the gates were tied up to save employees the trouble of raising and lowering them by hand, leaving the shaft unguarded, the proximate cause of the accident was the broken casting, and not the tying up of the gates; and it being the nondelegable duty of the master to furnish a safe place to work, evidence that the place was inadequately lighted is sufficient to make a case for the jury upon the question of defendant's negligence.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. An employee in a warehouse who fell down an unguarded elevator shaft is not guilty of contributory negligence, as a matter of law, in entering the building a few minutes before the working hour, in taking the passageway leading to the elevator, and in not failing to switch on the lights, where he testified that he did not know the location of the light switches, and had a right to assume that the elevator shaft was guarded by gates that worked automatically when the elevator was in working order.

SAME—FELLOW SERVANTS—SAFE PLACE. Where the master knew that an elevator was out of order, preventing the automatic action of the gates, the fact that some one had tied up the gates to save the trouble of operation by hand does not raise any question as to the negligence of a fellow servant, it not being shown who tied up the gates.

SAME—NEGLIGENCE—SAFE PLACE TO WORK—DURING REPAIRS. The fact that an independent contractor was engaged in repairing an elevator, so that the gates would work automatically, does not relieve the master from liability, where it was shown that some one had tied up the gates, leaving the elevator shaft unguarded, since his duty to keep the place reasonably safe was continuing and nondelegable.

TRIAL—SPECIAL INTERROGATORIES—DISCRETION. Error cannot be predicated upon the refusal to submit special interrogatories to a jury, since it rests in the sound discretion of the trial court.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $4,000 for personal injuries is not excessive where plaintiff, twenty-seven years of age and earning $10 per week, sustained a comminuted fracture of the neck of the femur, the muscles of his injured leg were atrophied and the leg shortened an inch and a half, and the testimony differed as to the ultimate usefulness and strength of the leg.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered April 29, 1913, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by an employee in a warehouse. Affirmed.

*John W. Roberts* and *Wright, Kelleher & Caldwell*, for appellant.

*James T. Lawler*, for respondent.

Gose, J.—The plaintiff, an employee of the defendant, fell into an elevator shaft in defendant's warehouse, on September 18, 1912, and sustained injuries for which he demands redress in this action. There was a verdict and judgment in his favor for $4,000. This appeal followed.

The appellant raises the following questions: (1) That the industrial insurance law, Laws 1911, p. 345 (3 Rem. & Bal. Code, § 6604-1 *et seq.*), withdraws this class of actions from the courts; (2) that there was no negligence shown; (3) that the respondent was guilty of contributory negligence; (4) that he assumed the risk; (5) that if any negligence was proven, it was that of a fellow servant; (6) that respondent was a mere licensee in the building at the time and place he received his injury; (7) that the negligence, if any, was that of an independant contractor; (8) that the court erred in refusing to submit certain interrogatories to the jury; (9) that the damages are excessive.

The first question merits scant attention, for the following reasons: (a) It is not raised in the pleadings and was not suggested in the court below; (b) it is not briefed in this court further than by a mere reference to the statute; and (c) the appellant has not brought itself within the terms of the act. Section 8, p. 362 (Id., § 6604-8), provides:

"In respect to any injury happening to any of his workmen during the period of any default in the payment of any premium under section 4, the defaulting employer shall not, if such default be after demand for payment, be entitled to the benefits of this act, but shall be liable to suit by the in-

jured workman . . . as he would have been prior to the passage of this act."

It was the duty of the appellant to plead and prove a compliance with the act.

A consideration of the second question, viz., that there is no evidence of negligence, requires a reference to the facts which the evidence tends to prove. Appellant's warehouse, consisting of basement, main floor and upper floor, is one hundred and twenty feet square. The main floor is used for storing furniture. The office is near the northwest corner. Not far from it, are the electrict light switches. The elevator, eight by ten feet in dimensions, is situated a little to the west of the center. It is operated by means of a rope upon a cable. The gates work automatically; that is, when the elevator is down the gates are up, and when the elevator is up the gates are down. A passage runs north and south through the center of the building, connected by four short passages with a parallel passage on the east leading to a toilet in the southeast corner. Respondent testified that he began working for appellant on September 17; that, on arriving the next morning, he registered at the office at 7:20, and went to the toilet; he had been there twice the previous day; that he walked east from the office to the east passage and followed that south to the toilet; that, in returning at 7:25, he got confused, followed the east passage to about the center of the building, and turned west through a passage which led directly to his place of work; that the floor was dark, the lights from above casting a glimmer thereon; that the passage ways were not straight; that, in his confusion and in the darkness, not having the elevator in mind, he fell into the open shaft and received his injury; that furniture was piled on both sides of the passageways, some of it to a considerable height; and that, on the afternoon before, they had piled it all around the elevator. A diagram of the building shows that about one-half of the wall space on three sides is windows, but the respondent said that the lighting was in-

adequate, (a) because the windows were not kept clean, and (b) because of the height of the furniture; that is, that there was light above but not sufficient light upon the floor. He further testified that electric lights were used for lighting this floor during the working day, but were not on at the time he fell. The working day began at 7:30 a. m. The sun rose at 5:50 a. m. on September 18, but the local representative of the weather bureau testified that the weather was "partly cloudy." It developed during the trial that the elevator was on the top floor, and that the gates were tied up with ropes at the time of the accident. It is not shown who tied the gates. The testimony further shows that the elevator was being repaired during the afternoon of September 17. One Montgomery, who was engaged in repairing the elevator on the 17th, testified as follows:

"Q. In what condition did you find the elevator? A. There was something got caught in a beam and bent it, and we took a sledge hammer and straightened it. . . . Q. Did you have to work the elevator up and down? A. No, sir. Q. Did you have to bring it down to the main floor? A. It was at the main floor. Q. What did you do with the gates? A. Took a casting off there. Q. Off the gates? A. Yes. Q. Why did you take the casting off? A. It was broken. It has nothing to do with the gates being down. This casting was broken. Your gates go down and the gates were down. Q. In order to repair the elevator, the gates had to be out of the way? A. No, sir; the gates were down and we were on that car straightening the car. Q. You brought the car down to the first floor? A. The car was at the first floor. . . Q. And the gates were right in place? A. Yes, sir; the gates were down. Q. How could the gates be down if the elevator was down? A. The automatic part was broken. Q. And you fixed it? A. Not at that time, but I got it fixed. Q. When did you fix it? A. Well, the day after or the following afternoon as near as I can remember. Q. The casting? A. Yes, sir. . . . Q. You left the elevator on this floor when you left? A. Yes, sir. Q. And the elevator was on that floor with the gates down? A. Yes, sir. . . . Q. You say that the automatic casting was broken? A. Yes, sir. Q. And

ACRES v. FREDERICK & NELSON.

the fact of that being broken, then the gates could not work?
A. The gates would go down. Q. And they could not work?
A. They could not be raised. Q. You would have to raise
them by hand? A. You would have to raise them by hand.
. . . Q. And if one went there and wanted to see them, it is
very easy to slide them up and down with their hands? A.
Yes, sir. . . . Q. Then a few days later when you fixed the
automatic casting, then the elevator would work automat-
ically? A. Yes, sir; after the elevator was repaired."

It will be observed that the repair work was being done
on the afternoon of the 17th of September; that a casting
was broken so that the gates would not work automatically,
but had to be worked by hand, and that they were not re-
paired until after the respondent was injured. The appel-
lant's testimony shows that about twenty-three men were
working in the warehouse, and that each of these men used
the elevator as the necessities of the work required. The
primary question is, What was the proximate cause of the
accident? Was it the tying up of the gate or was the tying
up of the gate a mere incident? We think the proximate
cause of the injury was the broken casting. The employees
used, and were expected to use, the elevator in the prosecu-
tion of their work. If they found it more convenient to tie
the gates than to raise and lower them by hand in carrying
on the work, this would not exempt the master from liability,
even if it were shown, which it was not, that the gates were
tied by a fellow servant. It is the duty of the master to
use reasonable care to maintain a reasonably safe place for
the workmen, and this duty is nondelegable. *Dumas v. Wal-
ville Lumber Co.*, 64 Wash. 381, 116 Pac. 1091; *Graaf v.
Vulcan Iron Works*, 59 Wash. 325, 109 Pac. 1016. This
rule means that the master must not expose the employee to
dangers which may be guarded against by reasonable care
and diligence. *McLeod v. Chicago, Milwaukee & P. S. R.
Co.*, 65 Wash. 62, 117 Pac. 749. The burden is upon the
one charging negligence to make it appear more probable
that the injury came, in whole or in part, from the master's

negligence than from any other cause. *Graaf v. Vulcan Iron Works, supra.* It is alleged in the complaint, and evidence was offered to sustain the allegation, that the floor was inadequately lighted. Whatever may be said of the tying up of the elevator gates, this circumstance, if standing alone, would have been sufficient to carry the case to the jury. *Schwarzschild & Sulzberger v. Drysdale,* 69 Kan. 119, 76 Pac. 441.

It is argued that the respondent was guilty of contributory negligence in entering the building a few minutes before the working hour, in taking the middle passage way, and in failing to throw on the lights at the switch post near the office. He testified that he did not know the location of the switches, and the appellant's foreman testified that he neither pointed them out to the respondent nor instructed him as to the manner of using them. It cannot be said, as a matter of law, that any of these acts constituted such negligence as to take the case from the jury. While the respondent knew the location of the elevator, he had a right to assume that there were no unguarded pitfalls in the building. Moreover, as the trial court aptly observed, it was not negligence, as a matter of law, for the respondent to be ready to go to work a few minutes before working time, and to so hold would be to put a premium upon indolence. *Perrault v. Emporium Department Store Co.,* 71 Wash. 523, 128 Pac. 1049; *Schwarzschild & Sulzberger v. Drysdale, supra.*

The appellant has cited and relies upon *Jones v. Moran Bros. Co.,* 45 Wash. 391, 88 Pac. 626, in support of his contention that the respondent was guilty of contributory negligence. In that case, the injured party was engaged in painting on a steamship, working between decks. At the close of the noon hour, he went down the stairway from the upper deck to the one next below, and started to pass through a compartment which he said was pitch dark, on his way toward his place of work. The court said:

"If this compartment was 'pitch dark' when respondent entered it, he, of course, knew and appreciated that fact, and cannot hold the master for any results flowing directly and solely from that condition."

That case is distinguishable because of the fact that the party did not receive his injury in the compartment where he was working, while in this case the injury was sustained on the floor where the respondent's work called him.

The questions of contributory negligence and assumption of risk approximate in cases of this character. The law is that the employee assumes no risk "not reasonably a necessary incident to the actual work in hand." *Koloff v. Chicago, Milwaukee & P. S. R. Co.*, 71 Wash. 543, 129 Pac. 398; *Dumas v. Walville Lumber Co., supra.* It will not do to argue that the appellant was not negligent in assuming either that the elevator was on the main floor or that, if it had been taken above or below, the gates were working automatically and barred access to the shaft; and at the same time contend that the respondent, who had worked in the place only one day, was guilty of contributory negligence in falling into the shaft, or that he assumed the risk in going to the toilet and returning to the place where he was required to work. The toilet was used, and was intended to be used, by the employees, and it cannot be said, as a matter of law, that an employee assumed the risk of going from the toilet through a passageway provided by the master.

What we have said disposes of the contention that the negligence, if any, was, or may have been, the negligence of a fellow servant. As we have said, it is not shown who tied up the gates, but the appellant knew that the elevator had been out of repair. The foregoing discussion also disposes of the appellant's contention that the respondent was a mere licensee on the premises at the time he met his injury.

The argument that appellant's injury was due to negligence of Montgomery who was engaged to repair the elevator, that he was an independent contractor, and that no

liability ensued from any want of reasonable care on his part, is fallacious for two reasons: (a) the break in the casting of the gates was not due to any act of his; and (b) the duty of the master to use reasonable care to keep the place reasonably safe was a continuing and nondelegable one. In addition to the authorities cited, see *Covington & C. Bridge Co. v. Steinbrock*, 61 Ohio St. 215, 55 N. E. 618.

In *Miller v. Moran Bros. Co.*, 39 Wash. 631, 81 Pac. 1089, 1 L. R. A. (N. S.) 283, cited by appellant, the plaintiff was employed by the defendant as a carpenter in building a battle ship. His injury was due to the falling of a steel plate which was being handled by employees of an independent contractor who had undertaken to place the plates on the side of the ship. In *Larson v. American Bridge Co.*, 40 Wash. 224, 82 Pac. 294, 111 Am. St. 904, also cited by appellant, it was held that the relation of master and servant does not exist between the original contractor and employees of an independent contractor, and hence that the former was not liable for the negligence of the employees of the latter. *Campbell v. Jones*, 60 Wash. 265, 110 Pac. 1083, is to the same effect.

The appellant also assigns error in the refusal of the court to submit certain interrogatories to the jury. We have repeatedly held that the submission of interrogatories to a jury rests in the sound discretion of the trial court. *Loy v. Northern Pac. R. Co.*, 68 Wash. 33, 122 Pac. 372.

In respect to the assignment that the damages awarded —$4,000—are excessive, the testimony shows, that the appellant was injured on the 18th day of September; that he was taken to, and remained in, the hospital until Thanksgiving; that the neck of the femur was broken, and according to the testimony of one of the physicians, the fracture was what is known among surgeons as a comminuted fracture, meaning a shattered fracture. At the time of the trial, the muscles of his injured leg were atrophied, and the injured leg was an inch and a quarter shorter than the other. One sur-

geon testified that it may continue to shorten, and that there is a soft union. Other surgeons testified that there was a bony or fibrous union. The testimony shows that the result was good from the standpoint of surgeons, but the surgeons differ materially as to the ultimate usefulness and strength of the leg. The appellant voluntarily paid the hospital expenses and the expenses of the surgeons who attended respondent while he was in the hospital. The respondent was twenty-seven years of age at the time of the injury, and was working for ten dollars a week. He testified, however, that he had theretofore earned in harness work, a line in which he had had considerable experience, eighteen dollars a week. On this testimony, we do not feel inclined to disturb the verdict.

We find no error in the record, and the judgment is affirmed.

CROW, C. J., ELLIS, MAIN, and CHADWICK, JJ., concur.