[No. 17165. Department Two. October 20, 1922.]

JOHN PERRY, *Respondent*, v. JAMES BEVERAGE *et al.*, *Appellants*.[1]

MASTER AND SERVANT (22)—REMEDIES UNDER COMPENSATION ACT —RELATION—TERMINATION OF EMPLOYMENT. The relation of master and servant had not terminated and the employee accordingly was entitled to compensation under the workmen's compensation act, where it appears that a bucker in a logging camp gave notice that he would quit that day, and after 6:30 p. m. he went to the office of the company to settle the amount due him and was struck by the foreman in an altercation over the matter (FULLERTON, TOLMAN, and PEMBERTON, JJ., dissenting).

SAME (172)—INJURY TO THIRD PERSON—LIABILITY—SCOPE OF EMPLOYMENT. A foreman in control of a logging camp charged with the duty of maintaining discipline, was acting within the scope of his employment in striking an employee, and the master is responsible therefor, where it was done to terminate an altercation at the office over the compensation due.

APPEAL (396) — REVIEW—PRESUMPTIONS—INSTRUCTIONS. Where the instructions are not brought up, it will be presumed that all matters were properly submitted to the jury.

MASTER AND SERVANT (121-2)—WORKMEN'S COMPENSATION ACT— REMEDIES OF WORKMAN—DELIBERATE INTENT TO CAUSE INJURY— EVIDENCE—SUFFICIENCY. Where, during an altercation in the office over the wages due, the foreman of a logging camp seized a water pitcher and struck an employee a violent blow on the face, the injury was the result of "deliberate intention to produce the injury," within Rem. Comp. Stat., § 7680, giving the employee the right to sue at law for "the excess of any damages over the amount receivable," under the workmen's compensation act.

SAME (121-2)—WORKMEN'S COMPENSATION ACT—REMEDIES OF WORKMAN—ACTIONS—BURDEN OF PROOF. In an action by an employee injured through the "deliberate intention" of the master, the burden of proof is upon the plaintiff to establish the amount that he was entitled to receive under the workmen's compensation act, Rem. Comp. Stat., § 7680, authorizing a civil action to recover "any excess of damage over the amount receivable" under the act; and without proof thereof, no recovery can be sustained (FULLERTON, TOLMAN, and PEMBERTON, JJ., dissenting).

[1]Reported in 209 Pac. 1102; 214 Pac. 146.

APPEAL (489)—JUDGMENT (54)—NOTWITHSTANDING VERDICT—MO-
TION FOR—POWER OF COURT. In an action by an employee injured
through the "deliberate intention" of the master, to recover the
"excess of damages over the amount receivable" under the work-
men's compensation act, Rem. Comp. Stat., § 7680, in which there was
no proof as to the amount plaintiff was to receive under the act, a
motion for judgment for defendant notwithstanding a verdict for
plaintiff, entitles the defendant to a dismissal of the action; and on
appeal the supreme court will not remand the case for a new trial
to enable plaintiff to supply the proof (FULLERTON, TOLMAN, and
PEMBERTON, JJ., dissenting).

MASTER AND SERVANT (121-2)—WORKMEN'S COMPENSATION ACT—
REMEDIES—INSTRUCTIONS. In an employee's action against a master
and foreman for injuries sustained in an assault by the foreman
with deliberate intent to injure him, the foreman is responsible for
the injuries inflicted, regardless of the non-liability of the master
and the servant's right to compensation under the workmen's com-
pensation act (overruled on rehearing).

### ON REHEARING.

MASTER AND SERVANT (121-2)—WORKMEN'S COMPENSATION ACT—
REMEDIES—CONSTRUCTION. An employee's action against a master
and a foreman for injuries sustained in an assault by the foreman
with deliberate intention to injure him, is barred as to the foreman
by the workmen's compensation act, abolishing all civil actions by
employees injured while engaged in extrahazardous employment,
except as against the employer under Rem. Comp. Stat., § 7680, for
"any excess in damages over the amount receivable" under the act
(PARKER, FULLERTON, TOLMAN, and PEMBERTON, JJ., dissenting).

Appeal from a judgment of the superior court for
King county, Tallman, J., entered September 23, 1921,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action in tort. Reversed.

*Shorett, McLaren & Shorett,* and *Edward R. Taylor,*
for appellant Beverage.

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellant
Webb Logging & Timber Company.

*Meyers & Couden* and *Alex Mackel,* for respondent.

MAIN, J.—The purpose of this action was to recover
damages for personal injuries. The defendants are

the Webb Logging & Timber Company, a corporation, and James Beverage, its superintendent or foreman. Separate answers were interposed by the defendants. In each there were certain admissions and denials, and an affirmative defense which was to the effect that, if the plaintiff sustained injuries, they were due to his own fault in making an assault upon the defendant Beverage and were inflicted as a matter of self-defense on the part of this defendant. The affirmative defenses were denied by a reply. The cause was tried to the court and a jury. At the conclusion of the evidence, each of the defendants presented a motion for a directed verdict. These motions were overruled, and the cause being submitted to the jury, a verdict was returned in favor of the plaintiff in the sum of $1,850. After the return of the verdict, each of the defendants made a motion for judgment notwithstanding the verdict. These motions were likewise overruled and judgment entered upon the verdict, from which both of the defendants appeal.

The facts necessary to an understanding of the questions presented may be summarized as follows:

On the 17th day of December, 1920, the appellant Webb Logging & Timber Company was operating a logging camp near Duckabush, in Jefferson county. The appellant Beverage was the foreman or superintendent in charge of the camp. The respondent Perry was employed in the camp as a bucker. On the morning of the day in question, Perry gave notice to Beverage that he desired to quit his employment that evening. Not having any scaler at the time, Beverage requested one Earl M'cArdle, an employee in the forest service of the United States, then at the camp, to scale the logs which Perry had bucked, for which he was entitled to compensation. Perry worked during that day; the

exact time of his ceasing to labor does not appear. That
evening at about 6:30 o'clock, Perry came to the office
of the company, which was at the camp, and entered
into a controversy with McArdle over the scale that
had been turned in, Perry claiming that the scale was
too small and McArdle insisted that it was accurate
and properly made. At this time Beverage, the su-
perintendent, and two or three other persons, were in
the office. After the discussion between Perry and
McArdle had continued for some minutes, Beverage
got up from a chair in which he was sitting and, mov-
ing over to near where Perry was standing, said to
him that "that will be enough," or something to that ef-
fect; Perry replying by directing Beverage to go back
and sit down. Some further conversation took place
between Perry and Beverage during which Beverage
picked up an enameled water pitcher and struck Perry
a violent blow on the left side of the face, seriously
injuring him. The testimony as to whether Beverage
at the time was acting in self-defense or whether it was
a deliberate or wilful assault is directly in conflict.
The present action was brought by Perry to recover
damages for the injuries which he sustained on this oc-
casion.

The questions to be determined will be considered in
what appears to be their natural sequence. The first
question is whether Perry, at the time he was struck,
had ceased to be an employee of the logging company.
From the facts stated, it appears that he gave notice
on the morning of that day that he was intending to
quit work. After he had his evening meal at the camp,
and at about the hour of 6:30 p. m., he went to the
office for the purpose of ascertaining the amount of the
scale and receiving his compensation. Under the au-
thorities, there can be but little, if any, question but

what the relation of employer and employee had not been terminated at the time. In *Pace v. Appanoose County,* 184 Iowa 498, 168 N. W. 916, it was said:

"The test in determining whether the injury has arisen in the course of employment is then said to be where the deceased, 'though actually through with the work, was still within the sphere of the work, or was doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.' The decisions of the courts and commissions are uniform in holding that if an employee has reached his employer's premises on his way to work or is still on the premises on his way home and meets with an accident, usually it will be adjudged to have arisen out of the employment."

In *In re Stacy,* 225 Mass. 174, 114 N. E. 206, it was said:

"While the employee's work for the day had been finished and he was on his way home at the time of the fatal accident, still it is settled that an injury to a workman may arise out of and in the course of his employment even if he is not actually working at the time of the injury."

In *Hackley-Phelps-Bonnell Co. v. Industrial Commission,* 165 Wis. 586, 162 N. W. 921, it was said:

"The essential elements of the contract of employment were that the employee should render services for the employer, and in return therefor the employer should pay him an agreed compensation. The duty to pay and the right to receive the compensation were integral parts of the contract of employment. For the convenience of the employer the place of payment was some distance from the place of service, but in going to and from such place of service the conveyance furnished therefor by the employer was used by the employee. So in going to get his pay he was but fulfilling a duty imposed upon him by the employer and using

the means of conveyance which the employer furnished his employees for such purpose.

"The general principle is that employment exists only in the area of duty. 1 Bradbury, W. C. 405. Tested by this principle, the employee comes within it. He was entitled under his contract to receive compensation for his services. His employer directed him to go to a place some distance from his work to get his pay and offered him the means of transportation for going there. He went in obedience to the duty placed upon him by his employer and acquiesced in by him, performing the last act under the contract whereby each could receive the full benefit thereof. Had the employer paid him at the camp, a different question would be presented.

"A number of cases are cited by the plaintiff holding that employees receiving injuries while coming or going to their employment in vehicles gratuitously furnished by the employer are not entitled to compensation. These do not touch the present case, because those injuries were received before the employment began or after it terminated. Here the employee, as we have pointed out, was still performing a duty imposed upon him by his employer and one necessary to perform before the terms of the contract of employment were mutually satisfied.

"If we turn to the text-books and decided cases on this subject, we find that they sustain the view that an employee going in the usual manner for his pay to a place designated by the employer is performing a service within his employment."

The relation of employer and employee not having been terminated at the time Perry sustained his injury, the latter was entitled to compensation under the industrial insurance act of this state. As will hereinafter be pointed out, this would not necessarily deprive him of the right to a law action in addition to compensation from the industrial fund, under the facts in this case.

The next question is whether, when Beverage struck

Perry, he was acting within the scope of his employment. On this question Beverage testified as follows:

"On the 17th day of December, 1920, I was foreman of the camp of the Webb Logging & Timber Company. Yes, I was the principal man in charge of that camp at that time. I have been active foreman for the logging company since 1911, with the exception of one year I was not active; that is, I was not active in the camp. There was no one else at the camp on this date who had any authority over me. I was in charge of the discipline of the same and the order of the camp at that time. (St. 44, 45)"

From this testimony it appears that Beverage was in charge of the camp at the time as foreman, and there was no one else there who had authority over him. It was his duty to maintain discipline and order at the camp at the time. There is no substantial distinction between this case and that of *De Leon v. Doyhof Fish Products Co.*, 104 Wash. 337, 176 Pac. 355, where it was held that an employee who was assaulted by the superintendent of the defendant company had a right of action against his employer. The same defense was made there as here that the act was not within the scope of the employment. The case of *Matsuda v. Hammond*, 77 Wash. 120, 137 Pac. 328, 51 L. R. A. (N. S.) 920, is relied upon by the logging company as sustaining its contention that the act was beyond the scope of the employment. Referring to that case in the *De Leon* case it was said:

"As there said, the general liability of the master to answer for the tort of a servant rests in the peculiar character of the employment, which, from its nature, is liable to create disputes and consequent breaches of the peace. It was so in this case, the authority of the superintendent to maintain discipline and to exercise a general discretion in the performance of his duty excepts the case from the rule in the *Matsuda* case and brings it within the exception there noticed."

Under the facts of the present case, it is controlled by the *De Leon* case and not by the *Masuda* case.

The next question is whether, when Beverage struck Perry, he did so with the deliberate intention to injure him. Even though Perry was engaged in extra-hazardous employment as defined in the workmen's compensation act, and was entitled to compensation from the industrial fund, he has a right of action where his injury was the result of deliberate intention. Section 7680, Rem. Comp. Stat., provides:

"If injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the workman, the widow, widower, child or dependent of the workman shall have the privilege to take under this act and also have cause of action against the employer, as if this act had not been enacted, for any excess of damage over the amount received or receivable under this act."

Under the evidence, the jury had a right to find that there was a deliberate intention on the part of Beverage to do injury. The instructions given upon the trial are not brought to this court, and therefore it is presumed that all questions proper for the jury to pass upon were submitted to them by instructions which correctly stated the law. There was evidence which would support a finding that the blow was struck without provocation and not in self-defense. As already stated, the evidence upon this question was in conflict. Beverage testified that: "Yes, I struck him with all my might. I don't know just how hard I did strike him." The full force of the blow was received by Perry, as already stated, upon the left side of the face. The jury had a right to find that the blow was struck with a deliberate intention to do injury. In *Jenkins v. Carman Mfg. Co.*, 79 Ore. 448, 155 Pac. 703, it was said:

"We think by the words 'deliberate intention to produce the injury' that the lawmakers meant to imply that the employer must have determined to injure an employee and used some means appropriate to that end; that there must be a specific intent, and not merely carelessness or negligence, however gross."

That excerpt was quoted with approval in the case of *Delthony v. Standard Furniture Co.*, 119 Wash. 298, 205 Pac. 379. Perry, at the time he received his injury, being entitled to take under the workmen's compensation act, and the injury being with a deliberate intention, he was entitled in the present action to recover, as stated in the section of the statute above quoted, "for any excess of damage over the amount received or receivable under this act." By this statute he was entitled to recover for his injuries, less the amount which he had received, or was entitled to receive, under the workmen's compensation act. There is no evidence in this case as to what that sum was.

The next question then is, where rests the burden to prove the amount which Perry had received, or was entitled to receive, from the industrial fund. If this burden rests upon Perry, he has failed to allege and prove it and one element of his action would be lacking. If the burden rests upon the employer, the logging company is not in a position to complain of this lack of proof. In *Zwaduk v. Morris & Co.*, 109 Kan. 186, 197 Pac. 868, it was held that, where an injured workman sustains partial, temporary disability, continuing after a period of total disability, evidence must be introduced to prove the wages that he will be able to earn during the period of partial, temporary disability, and the burden of proof is on him to show that fact. It was there said:

"The plaintiff argues that the burden was on the defendant to establish the amount that the plaintiff will

be able to earn during his period of partial disability. This argument is not good, for the reason that judgment cannot be rendered in favor of the plaintiff until he proves his cause of action. To do that he must prove his employment, his injury, the wages that he was earning before, and the wages that he has earned and will be able to earn after the expiration of the period of total disability. Without evidence on all these propositions, judgment for compensation for the period of partial disability cannot be rendered in his favor, for the reason that he does not bring himself within the statute. The plaintiff must prove the wages that he has earned and will be able to earn during the time he is under partial disability, or there will be no basis from which to calculate the amount of his compensation.''

In *Acres v. Frederick & Nelson,* 79 Wash. 402, 140 Pac. 370, 5 N. C. C. A. 557, an action was brought against the defendant for personal injuries. One of the questions which arose was on which party rested the burden to allege and prove that the defendant, the employer, was in default in making payments to the industrial fund. Under the statute as it then existed, which has been since amended as pointed out in *Freyman v. Day,* 108 Wash. 71, 182 Pac. 940, it was held in the *Acres* case, *supra,* without discussion, that the burden was upon the employer. The question, however, was not raised in the pleadings and was not suggested in the trial court. Conceding that the *Acres* case was correctly decided, it is not controlling here. In this case the failure to prove the amount received or receivable under the workmen's compensation act was a part of Perry's case. It affected the amount which he was entitled to recover. There was no duty on the part of the logging company to ascertain and determine this amount. In the *Acres* case, it was the duty of the defendant to meet its premiums, and if they were not

paid, the matter was one which was within its immediate knowledge. This question in this case was specifically raised upon the motion interposed by the logging company at the conclusion of the evidence and before the case was submitted to the jury.

The next question is whether, there being a failure of proof as to the amount of compensation received or receivable from the industrial fund, and the duty being upon Perry to allege and prove this, the result should be a new trial or a directed judgment of dismissal. The respondent argues that the motion for judgment notwithstanding the verdict, inasmuch as no motion for a new trial was made, should be considered such a motion and a new trial should be directed in order that the respondent might supply the proof which is lacking. In *Forsyth v. Dow,* 81 Wash. 137, 142 Pac. 490, it was said, referring to a motion for judgment notwithstanding the verdict, "Nor does the statute make the motion in any way dependent upon or concurrent with the motion for a new trial." In *Brown v. Walla Walla,* 76 Wash. 670, 136 Pac. 1166, it was pointed out that the motion for judgment notwithstanding the verdict invokes no element of discretion, but calls for the exercise of purely judicial functions of the trial court and of this court on review. It was further pointed out that the motion for a new trial invokes, on the other hand, a compound of the discretionary and judicial functions, both the discretion and the attendant responsibility of its exercise being vested in the trial court. In *Kieburtz v. Seattle,* 84 Wash. 196, 146 Pac. 400, it was held that a party is not precluded from seasonably interposing a motion for judgment notwithstanding the verdict by suffering the case to go to the jury on the facts without interposing a motion for nonsuit, a motion for a directed verdict, or a chal-

lenge to the sufficiency of the evidence.    In *Roe v. Standard Furniture Co.,* 41 Wash. 546, 83 Pac. 1109, it was said:

"This court has repeatedly reviewed decisions of trial courts refusing to direct verdicts, and we are of the opinion that it is the proper practice for a trial court, upon the hearing of a motion for judgment *non obstante veredicto,* to enter final judgment in favor of either party where it is warranted by the undisputed evidence.    The facts being undisputed, it becomes the duty of the court to apply the law, there being no issue to submit to a jury.    While the above rule of practice may not have been heretofore expressly announced by us, we have nevertheless in a number of cases put it into practical effect and recognized the principle above enunciated."

The supreme courts of Minnesota and North Dakota treat the motion for judgment notwithstanding the verdict in a different way.    In those jurisdictions the motion will not be granted unless there is no reasonable probability that the defects in the evidence, or the proof necessary to support the verdict, will not be remedied upon another trial.    Those courts treat the motion for judgment notwithstanding the verdict, where there is reasonable probability that the defective proof may be supplied upon another trial, as a motion for a new trial. The holdings are placed upon the respective statutory provisions of those states.    *Marquardt v. Hubner,* 77 Minn. 442, 80 N. W. 617; *First State Bank of Eckman v. Kelly,* 29 N. D. 84, 152 N. W. 125.    But the rule in this state is different, as shown by the cases from this court above cited and quoted from.    The proof being defective, there is no alternative but to reverse the judgment as to the Webb Logging & Timber Company and direct a judgment of dismissal as to it.

The final question is whether the judgment of dismissal against the logging company affects the judg-

ment against Beverage. Perry was an employee of the logging company, not of Beverage, who was the superintendent or foreman of that company in charge of the camp. The logging company was performing the work which was within the provisions of the workmen's compensation act, there defined as being extrahazardous. Beverage, as a superintendent or foreman, individually had no relation to that act. In the absence of the statute placing those engaged in extrahazardous work under its provisions, the respondent would have had an action both against the logging company and against Beverage. The placing of the logging company's work under the act did not deprive Perry of a right of action against Beverage. In *Stertz v. Industrial Ins. Comm.*, 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918B 354, an employee of a logging company was shot and killed by one not in the employ of that company. The question was whether the family of the deceased had a right to compensation under the workmen's compensation act, and it was held that they had such right. That case, however, does not go to the extent of holding that they would not have had a right of action against the wrongdoer.

The judgment will be reversed as to the Webb Logging & Timber Company with direction that the action as to this party be dismissed. The judgment as to Beverage will be affirmed.

PARKER, C. J., MACKINTOSH, HOLCOMB, and HOVEY, JJ., concur.

## ON REHEARING.

[*En Banc.* April 5, 1923.]

MAIN, C. J.—After the opinion of the Department in this case was filed, a petition for rehearing was presented by the appellant Beverage and granted. A majority of the court are now of the view that the

Department opinion was correct and should be adhered to except as to the last point discussed, where it was held that the judgment as to the appellant Beverage could be sustained even though it was reversed and ordered dismissed as to the other appellant, the Webb Logging & Timber Company. Upon the rehearing, this question was more fully argued than it had been when the case was heard by the Department, and after giving it further consideration, we are convinced that the Department opinion is erroneous wherein it holds that the judgment can be sustained as to Beverage, the superintendent and manager of the logging company, even though dismissed as to that company.

In *Peet v. Mills,* 76 Wash. 437, 136 Pac. 685, Ann. Cas. 1915D 154, L. R. A. 1916A 358, the plaintiff sought to recover from the president of the railway company by which he was employed, charging negligence, directly attributable to the president, which proximately caused the injury for which compensation was sought. It was there held that, since the plaintiff, at the time of the injury, was engaged in extra-hazardous work and was under the workmen's compensation act, he had no right to recover, even from a third party whose negligence, as he alleged, produced the injury. In *Ross v. Erickson Construction Co.,* 89 Wash. 634, 155 Pac. 153, L. R. A. 1916F 319, it was held that the plaintiff, who was under the workmen's compensation act, had no right to maintain an action, for malpractice aggravating his injuries, against the physician provided by the master to furnish medical attendance, since the injury caused by such malpractice was proximately attributable to the original hurt and grew out of the employment. In *Zenor v. Spokane & Inland Empire R. Co.,* 109 Wash. 471, 186 Pac. 849, it was held that the plaintiff, being under the workmen's compensation

act and in the employ of the city of Spokane at the time
he was injured by coming in contact with the electric
wires of the defendant company, had no right of action
against that company, and that his full measure of re-
covery was what he was entitled to out of the industrial
insurance fund. The effect of the holding in those
cases is that an injured workman who is under the
workmen's compensation act, and whose injury grew
out of his employment, has no right of action, either
against his employer or against a third person, except
as provided in the act. In the *Peet* case, *supra,* it was
said:

"The act contains its own declaration of legislative
policy, in reciting in § 1 that the common law system
in dealing with actions by employees against employ-
ers for injuries received in hazardous employments is
inconsistent with the modern industrial conditions,
uneconomic, unwise and unfair, and that, as the wel-
fare of the state depends upon its industries and even
more upon the welfare of its working men, the state of
Washington, in the exercise of its police and sovereign
power, declares its policy to withdraw all phases of
the premises from private controversy regardless of
questions of fault and to the exclusion of every other
remedy, proceeding, or compensation except as pro-
vided in the act; 'and to that end all civil actions and
civil causes of action for such personal injuries and
all jurisdiction of the courts of the state over such
causes are hereby abolished, except as in this act
provided.' "

If, then, the respondent had a right to maintain an
action against his employer or against Beverage, the
superintendent of such employer, it must be by reason
of some provision in the act giving such right. The
judgment, as pointed out in the opinion of the Depart-
ment, was not sustained as to the logging company,
the employer, because the respondent Perry had failed

to prove what his excess of damages would be over the amount received or receivable under the workmen's compensation act. By § 6 of the workmen's compensation act (Laws of 1911, p. 361; § 7680, Rem. Comp. Stat.), a right of action is reserved to the injured workman where his injury results from the deliberate intention of his employer to produce such injury, and he has a right to take under the act and also a cause of action against the "employer," as if the act had not been enacted, "for any excess of damages over the amount received or receivable under this act." The right of action here reserved is against the employer. Beverage was not the employer, but the superintendent and manager of the logging company which was the employer of the respondent. Either one of two situations is presented: If the term "employer" used in the statute be construed as broad enough to include the superintendent and manager, then it would follow that the respondent's case would fail as to Beverage for the same reason that it failed as to the logging company. On the other hand, if the word "employer" be construed as not sufficiently broad to include the superintendent and manager, who was the active agent in producing the injury, then the judgment as to Beverage could not be sustained because the respondent, having sustained an injury which grew out of his employment and having no right of action reserved to him in the statute, would not be entitled to recover against Beverage, a third person, under the doctrine of the cases above cited. It seems an anomaly to say that one who has been injured by the deliberate intention of another to do injury does not have a right of action against such person; but the doctrine is well settled by the decisions of this court to which attention

has been called, and so long as those decisions remain undisturbed the result cannot be otherwise.

The judgment will be reversed as to both appellants and the cause directed to be dismissed.

HOLCOMB, BRIDGES, MACKINTOSH, and MITCHELL, JJ., concur.

PARKER, J. (dissenting)—I adhere to the conclusion reached in the Department opinion.

FULLERTON, J. (dissenting)—I am compelled to dissent from the conclusion reached by the court in this cause. In my opinion, the court is in error in holding, as it held in its original opinion and now here affirms, that the respondent Perry was, at the time the battery was committed upon him, an employee of the appellant logging company, and thus subject to the provisions of the workmen's compensation act; and in error in the conclusion that the cause must be concluded here, even assuming that the first position is without error.

Perhaps it will aid to clarity if I state the facts somewhat more fully than they are stated in the majority opinion. At the time of and prior to the occurrence which gives rise to the action, the appellant logging company was engaged in logging near Duckabush, in Jefferson county. The appellant Beverage was the superintendent of the logging company in charge of its camp. The respondent was in the employ of the company as a bucker. A bucker, it may be explained, is a workman who follows the tree-fallers and cuts the fallen trees into suitable sawlog lengths. Perry was not employed as a day laborer at a fixed compensation per day, but was employed to work by the piece as it were; his compensation being fixed at a certain sum per thousand feet, board measure, for the logs bucked, to be determined by a scale of the logs.

On the morning of the day on which the battery occurred, the respondent gave notice to the superintendent that he would quit his employment on that day, and requested that a scaler be sent out to scale the logs bucked by him. The company had no log-scaler then at the camp in its own employ, but there was at the camp an employee of the government forestry service competent to make such a scale, and the superintendent requested him to make it. The employee complied with the request, going to the respondent's place of work to make the necessary measurements, and computing the quantities in the evening at the close of the day. The total quantity was less than the respondent claimed it should be, and he so complained to the scaler. The battery for which the respondent sues was a consequence of the dispute between the scaler and the respondent over the correctness of the scale.

· The pleadings made no issue on the question which the majority find determinative. The respondent framed his complaint on the theory that his employment had then ceased, and the answers of the appellants did not make it an issue; they consisted of denials of the matters on which liability was based, and affirmative pleas to the effect that the battery was committed by the superintendent in defending against an assault made upon him by the respondent. Nor was the evidence directed to this question. The respondent was not questioned on the matter at all, and the only reference to it is found in the testimony of the superintendent. When this officer of the appellant was on the witness stand, he was questioned concerning the scaler's attitude towards the respondent while the dispute concerning the scale was in progress. After the

examination on that point was concluded, the following appears:

"Q. Now, while we are on that point, tell how it happened that Mr. McArdle happened to make this particular scale of logs for Mr. Perry? A. Well, we just had one set of fallers and buckers there at the time; we did not have any scaler there at the time; and Mr. McArdle was there. Mr. Perry told me in the morning that he wanted to quit that evening; and I went and asked Mr. McArdle if he would go and scale up. I didn't know just what time Mr. Perry quit work, but it must have been sometime in the afternoon, because it was scaled up."

There is the further circumstance (mentioned in the majority opinion) that the respondent had his evening meal at the camp. But this circumstance I cannot conceive has any bearing upon the question. The fact appears in the evidence and nothing more. It is not shown that he was to receive his board as part of his compensation, and if we are to indulge in surmises, my conclusion would be opposed to the conclusion seemingly drawn by the majority. It is a well known fact that, while logging companies maintain boarding houses for the convenience of their employees, the employees are charged at least a sufficient sum for board to cover the cost of its maintenance.

It seems to me, therefore, that this record falls far short of conclusively establishing that the relation of employer and employee existed between the logging company and the respondent at the time the assault and battery occurred. Indeed, I can reach no other conclusion than the conclusion that the relation had terminated some hours prior thereto. It is not the general rule that an employee's contract of employment continues from the time he ceases his work thereunder until he receives his pay. These happenings by

no means always follow in regular sequence, and the general rule is the other way. There is no reason why the general rule is not applicable in the present instance. The respondent had announced his intention to quit at the close of the day's labor and the appellants had assented thereto. When he ceased labor at the agreed time, manifestly the relation of employer and employee ceased, and the relation of debtor and creditor thereafter existed. As a creditor, the respondent had the right to go to the office of the logging company to collect the money due him, and, of course, was not a trespasser in so doing. He stood on the same plane that any other creditor would stand, and has the same remedy for a wanton assault and battery made upon him that any other creditor would have under like circumstances.

The cases cited by the majority to sustain a contrary view are, in my opinion, not in point. In the first place, they are severally controversies between the injured workman and the insurance commission itself; the one contending that he is within the insurance law, and the other contending that he is not. In such instances the courts give to the insurance act a broad and liberal construction and resolve every doubt in favor of the injured workman. But such is not the rule where the contest is between the employer and employee, especially where the former is attempting to invoke the act to escape the consequences of a wanton injury.

In the second place, in none of the cited cases had the contract of employment between the employer and employee finally terminated; that is, terminated in the sense that the employee was no longer to continue in the employment. The case of *Pace v. Appanoose County*, 184 Iowa 498, 168 N. W. 916, involved a death

claim—the person on whose death the claim was based having been killed while driving an engine from a place where it had been taken for repairs to a place where it was intended to be used by the driver in repairing a road. Seemingly it could hardly have been determined otherwise than that the injury arose "out of" the employment, the point upon which the decision turned. But the case is to me somewhat out of the ordinary in another aspect. Notwithstanding the court, after a somewhat extended argument, concluded that the accident fell within the compensation act, it finally dismissed it on another ground; namely, that the person killed was not an employee within the meaning of the act, but was an independent contractor, and for that reason not entitled to recover under the act. Seemingly, if this conclusion was correct, the question first discussed was moot.

*Stacy's* case, 225 Mass. 174, 114 N. E. 206, was also a death case; the person on whose death the claim was founded having been drowned by breaking through the ice of a lake over which he was traveling while on his way home after ceasing his day's work.

In *Hackley-Phelps-Bonnell Co. v. Industrial Commission*, 165 Wis. 586, 162 N. W. 921, the employee was injured while on his way from the scene of the logging operations to the place appointed by the employer as the place of payment, and it was held that, at the time of his injury, he was in the course of his employment and entitled to compensation from the insurance commission. Conceding these cases to have been correctly decided, I am unable to conceive how they can be at all analogous to the situation now before us. There was no question in any of them as to the termination of a contract of employment; the continuation of the employment was in each of them conceded, the only ques-

tion being whether the death or injury arose out of, or was caused or received while the sufferer was in the course of, his employment. Here the question is not that; it is whether the injury was received while the respondent was still in the employment of the appellant logging company, and, in my opinion, they have no bearing upon that question.

I am of the opinion, moreover, that the majority have gone too far afield in their search for authority. This court has had before it upon two occasions the question when and when not a servant can be said to be in the employment of the master. In *Peterson v. Seattle Traction Co.,* 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586, the plaintiff was employed as a tracklayer for the defendant under a contract fixing his compensation at a certain sum per day, and in addition thereto his transportation to and from his home to his place of work. At the close of his day's work, while riding on a regular passenger car of the defendant to his home, he was injured through the negligence of the operator of the car. He sued in damages, and the company sought to defend on the ground that he was, at the time of the injury, still in the company's employment, and that, in consequence, he could not recover because of the fellow-servant doctrine. The court denied the defense, holding that his employment ceased with the cessation of his labor, and that while riding home he occupied the position of any other passenger.

In *Baird v. Northern Pac. R. Co.,* 78 Wash. 67, 138 Pac. 325, a similar state of facts was presented. The plaintiff was employed as a day laborer in a gravel pit. There was no contract to carry him to and from his place of work, but he, with other employees, was per-

mitted, while so going, to ride upon an engine of the railway company. When so riding, he was injured by the negligent act of the engineer. The action was for damages on account of the injuries, and the railway sought to defend on the ground that the contract of employment had not terminated, claiming, in consequence, that the injury was the result of the negligence of a fellow servant. Answering the objection, the court used this language:

"Nor do we think the court erred in refusing to instruct the jury that the respondent and engineer were fellow servants at the time of the accident, and that, if the respondent was injured through the engineer's negligence, the appellant would not be liable. The appellant contends that, under the facts of this case, the respondent was still in the employ of the railroad company. It is obvious that if he was not, he could not have been a fellow servant of the engineer, who was in such employ. The case seems to us to fall squarely within the rule announced in *Peterson v. Seattle Traction Co.*, 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586, where this court said:

" 'We think that when the respondent had ceased his day's work at track laying, he was not in the employ or under the control of the appellant until he again resumed track laying under the superintendency of Linder, the foreman of the track gang. Linder certainly had no control over the respondent while going to and from his work, and the respondent was not under any obligation to go to and from his work of track laying on the cars of the appellant. At six o'clock his day's work ended. He had no rights and no privileges on that car, other than or different from those of any other passenger. He was not required to perform services on the car. He was under the control of the conductor of the car and not of his own foreman, just as any other passenger on the car.'

"The evidence here shows that the respondent's day's work ended when he ceased his labors at the pit

at six o'clock. After that he was at liberty to proceed to his home in any manner he saw fit. He was no longer under the control or direction of the appellant or any of its employees or agents. The mere fact that he was permitted, if he so desired, to ride upon the engine to a place near his home did not prolong his hours of service or make him a fellow servant of the engineer. *Moronen v. McDonnell* (Mich.), 143 N. W. 8; *Dickinson v. West End St. R. Co.,* 177 Mass. 365, 59 N. E. 60, 83 Am. St. 284, 52 L. R. A. 326; *Fletcher v. Baltimore & P. R. Co.,* 168 U. S. 135; *Stone-Webster Engineering Corporation v. Collins,* 199 Fed. 581.''

I am unable to distinguish these cases from the case in hand. Obviously, no different rule of law should be applicable to the contract of a laborer who agrees to work at track laying or in a gravel pit, with reference to the termination of the contract, than is applicable to a laborer whose contract is to buck logs. If the employment of the former terminates with the cessation of the actual service, so does the latter.

The workmen's compensation act covers only those instances where the injury occurs to an employee while he is ''in the course of his employment.'' This phrase will, of course, where it is necessary to the due administration of justice, be given a liberal construction. But, in my opinion, it is going far beyond even liberality to construe it as covering an instance, such as the one at bar, where the employment has been terminated in its entirety by the mutual agreement of the parties before the injury occurs, and the employee is at the premises of the employer for the sole and only purpose of collecting the balance due him for his services; and, especially so, where the question is not an issue in the pleadings, and the facts relating to it appear only incidentally in the evidence as explanatory of another phase of the case.

But, conceding the foregoing branch of the case to be correctly determined by the majority, I think they are in error in their disposition of the cause. It is not the rule that a workman engaged in an extra-hazardous occupation, who is injured in the course of his employment, is in all instances barred from an action in damages against his employer. By the sixth section of the workmen's compensation act, it is provided that, where the injury results to a workman from the deliberate intention of the employer, the workman has a cause of action against him, "as if this act had not been enacted," for any excess of damage over the amount received or receivable under the act. The evidence in the particular case abundantly justified a finding on the part of the jury that the injury to the respondent was wilfully and intentionally inflicted.

These propositions are not denied in the majority opinion; on the contrary, they are directly conceded, but it is held that, since the respondent did not show what sum he was entitled to receive from the industrial fund, so that the amount could be deducted from the total sum of his injury, there was not sufficient evidence before the jury on which to base a verdict, and it is concluded from this fact that the action cannot be reversed for a new trial, but must be dismissed with prejudice against a further prosecution of the cause. This, to me, erroneous conclusion is based upon the manner by which the appellant raised the question. It is not denied that had the appellant followed the statutory procedure and moved for a nonsuit, challenged the sufficiency of the evidence, moved to set aside the verdict, or moved for a new trial, and the motion had been denied by the trial court, this court would, on a reversal of the judgment, have sent the case back to the trial court to be dealt with as the evi-

dent justice of the case required. But it is held that because the appellant has chosen to waive these statutory motions and interposes in lieu of some one of them a non-statutory motion—the common law motion for judgment *non obstante veredicto*—it has thereby tied the court, hand and foot, leaving it without discretion or option, if it finds that the evidence is incomplete, to do more than direct a judgment in favor of the mover. It is this conclusion which I think untenable. It seems to me to be not only a violation of the general spirit and intent of the practice act, but is in direct violation of that provision of the code relating to appellate procedure (Rem. Comp. Stat., § 1737) which empowers this court upon an appeal from any judgment either to "affirm, reverse or modify any such judgment . . . direct the proper judgment or order to be entered; or direct a new trial or further proceedings to be had; . . . " As I view these statutes, they were enacted for the express purpose of enabling the court to escape the rigid practice rules of the common law, and I cannot understand why it is not applicable to any form of motion, whether statutory or common law. It seems to me that not to so hold is to hark back to those ancient days when matter of the procedure was regarded as of more importance than the substance of the issue, and where, too often, the rights of the litigants and the justice of the cause were sacrificed to an adherence to form. The sole purpose of the reformed procedure, of which the statute above cited is a part, was to correct this evil, and, in my judgment, the statute should be given effect.

I do not deny, of course, that this court has many times sustained a motion for a judgment notwithstanding the verdict and dismissed the action. But these have all been instances where it conclusively ap-

peared, either from the evidence of the plaintiff himself or from the evidence introduced on the part of the defendant, that the plaintiff under no circumstances could recover. In such a case it is eminently proper to dismiss the action; this, if for no other reason, because it would be an idle ceremony, a waste of time and substance, to further prosecute it. But this is the first time the court has so concluded where the plaintiff has a valid cause of action and has failed of recovery because of mere error on the part of the trial court. Not only have we not heretofore so held, but we have at least in one case announced a contrary doctrine. In *Spokane Grain Co. v. Great Northern Express Co.*, 55 Wash. 545, 104 Pac. 794, the action was for the conversion of certain animals. At the close of the plaintiff's case, and at the close of all of the evidence, the defendant moved for a directed verdict. Each of these motions was denied, and the case submitted to the jury. On the return of a verdict for the plaintiff, a motion for a judgment *non obstante veredicto* was interposed. This motion was also denied and a judgment was entered upon the verdict. On appeal this court held that the plaintiff had mistaken his remedy, and that the court should have sustained the latter motion, but it did not direct the entry of a judgment which would forever bar a recovery on the part of the plaintiff; it directed that the cause be dismissed without prejudice to the right of the plaintiff to prosecute a proper action. Manifestly, if the court had then entertained the view it now entertains, it would have made the proceeding final.

The cases from this court the majority cite as sustaining the rule are, in my opinion, wholly beside the question. In none of them was the question presented, and in none of them was it decided. It is true that in

*Brown v. Walla Walla,* 76 Wash. 670, 136 Pac. 1166, the court did say that the motion for judgment notwithstanding the verdict invoked no element of discretion, and called only for the exercise of the purely judicial functions of the trial court and this court on review, but we were there distinguishing between the powers of the trial court, when such a motion was presented, and its powers on a motion for a new trial; pointing out that the one could not be granted where there was evidence or inference from evidence tending to support the issue, while on the other there was invoked a "compound of the discretionary and judicial functions" of the court, permitting the granting of the motion, even though there might be evidence or inference from evidence supporting that side of the issue opposed to the party urging the motion. There can be no doubt as to the soundness of the distinction made, but it is far from deciding that, on the granting of a motion for judgment notwithstanding the verdict, there can be but one judgment entered, namely, a judgment finally determining the action.

The case of *Roe v. Standard Furniture Co.,* 41 Wash. 546, 83 Pac. 1109, as I read it, opposes rather than supports the principle to which it is cited. In that case the appellant's counsel, urging that the motion could not be entertained under the circumstances there shown, pointed out that it was a common law and not a statutory motion, and that at common law it was a motion for the plaintiff alone and was addressed to the sufficiency of the defense, and could not be invoked by a defendant against the plaintiff's cause of action; arguing that, since the statute did not recognize the motion, it should be given its common law effect. The court, answering the objection, stated that the "appellant's statement of the early common law rule is

historically correct, but the practice in this state has been modified, and such modification is warranted by certain provisions of our code hereinafter mentioned,'' and later on cited as authority for its statement the very section of the statute I have mentioned and in part quoted. Manifestly, it seems to me, if the statute so far modifies the common law rule as to permit the court to entertain the motion under circumstances which the common law did not permit it to be entertained, it also so far modifies the rule as to permit the court on reversal to direct that form of judgment the justice of the case requires. The court did, it is true, later on in the opinion use the language the majority quote, and I do not question that the language was appropriate to the point to which it was directed. But the court was discussing the power of the trial court to grant such a motion; it was not said, nor do I think meant to be said, that when the evidence was insufficient merely because the trial court misconceived the applicable principles of law, it was without power, because of the form of the motion, to correct its evident mistake.

Nor am I able to find that the courts elswhere have sustained the rule now here announced by the court. It is conceded by the majority that the courts of Minnesota and North Dakota announce a contrary doctrine, but the cases from these courts are dismissed with the statement that there are in those states statutory enactments upon the subject. But had the court set forth the statutes, it would have appeared that the statutes in no manner attempt to direct or control the action of the court when applying the statutory procedure; it would have appeared that they simply provide for such a procedure, leaving the courts free to

determine the proper remedy. Being such, the statutes are but declaratory of what we recognize to be the common law rule, and I can see no reason why the cases have not the authority they would have were there no statute at all upon the subject.

But the more pertinent cases, in my opinion, are those from the state of New York. In that state there is a statute, similar to the statute from this state I have before quoted, empowering the court on appeal to "reverse or affirm, in whole or in part" the judgment appealed from, to direct the proper judgment to be entered, or to grant a new trial. Under this statute, it is the uniform rule of the appellate courts of that state, where it finds the evidence insufficient to sustain the judgment of the court below, to direct such a judgment as the justice of the case requires. If it appears that under no circumstance can the plaintiff recover, it will direct a final judgment; on the other hand, if it appears that the mis-trial arose, or if the question is even doubtful, it will direct a new trial. In *Griffin v. Marquardt*, 17 N. Y. 28, this language is used:

"It is proper to say, and to say it with great distinctness, as the opinion of this court, that extreme caution ought to be exercised in refusing new trials where judgments are reversed. The discretion of the appellate court should be exercised in that direction only in cases where it is entirely plain, either from the pleadings or from the very nature of the controversy, that the party against whom the reversal is pronounced cannot prevail in the suit."

In *Foot v. Aetna Life Ins. Co.*, 61 N. Y. 571, it is said:

"It is not sufficient to refuse a new trial, that it is highly improbable that the party defeated upon the appeal can succeed upon the new trial. It must appear that he certainly cannot."

In *Edmonston v. McLoud,* 16 N. Y. 543, it is said:

"But it is insisted that the Supreme Court upon such reversal was not authorized to render final judgment. The case of *Astor v. L'Amoreux* (4 *Seld.* 107) is relied upon to sustain this position. In that case the plaintiff had recovered a judgment in an action for rent. There was no pretence that the allegations in his complaint were not sufficient, if proved, to sustain the action. He had given such proof as induced the court, at the trial, to render judgment in his favor. Upon appeal, the superior court reversed the judgment, and instead of ordering a new trial, rendered final judgment for the defendant. This was clearly wrong. It was impossible for the appellate court to know that, though it might deem the proof which had been given insufficient to sustain the judgment, the defect might not be supplied upon another trial.

"But where the appellate court can see that no possible state of proof, applicable to the issues in the case, will entitle the party to a recovery, it is not necessary, or even proper, that a new trial should be awarded."

See, also: *Benedict v. Arnoux,* 154 N. Y. 715, 49 N. E. 326, and the cases therein collected.

It would be interesting to review the decisions of other states upon the question, but time and space forbid. I will say, however, that, in so far as my investigations have gone, in all, or practically all, of the states it is proper in some form to challenge the legal sufficiency of the evidence to sustain the plaintiff's cause of action. The more common method is to move for a nonsuit at the close of the plaintiff's evidence, to move for a directed verdict at the close of the entire evidence, or, after verdict, move in arrest of judgment or for a new trial; it is only in a very few of the states that the motion here in question is recognized as a regular form of procedure. There is not even then, a unanimity of opinion as to the proper disposition to

be made of the case after the challenge is made and denied in the lower court and sustained on the appeal. Some of the courts hold that there must be a new trial in all cases, and such is the rule of the United States Supreme Court. *Slocum v. New York Life Ins. Co.,* 228 U. S. 364. Others again adopt the rule of the New York courts, namely, that the state of the record will control the direction; if it appears from the evidence that the plaintiff can under no circumstances recover, a judgment against him will be directed; if, on the other hand, it appears that the want of sufficient evidence is due to an error of the trial court, or that it is possible for the plaintiff to sufficiently prove his case on another trial, a new trial will be granted. None of the courts, however, make a distinction in the governing rule because of the form of the motion. In this respect this court, by reason of the present decision, stands alone on that question.

In my view of the case, the judgment appealed from should stand affirmed, or, if not this, it should be reversed and remanded for a new trial.

TOLMAN and PEMBERTON, JJ., concur with FULLERTON, J.